STATE of Wisconsin, Plaintiff-Respondent,

v.

John Wayne McCOY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 86–1992–CR. Argued February 3, 1988.—Decided March 22, 1988.*

(Also reported in 421 N.W.2d 107. )

For the defendant-appellant-petitioner there were briefs by *Kathryn S. Grosdidier,* and *Doar, Drill & Skow, S.C.,* New Richmond and oral argument by *Kathryn S. Grosdidier.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

DAY, J. This is a review of a published decision of the court of appeals[1] which affirmed a judgment of conviction of the circuit court for Barron county, Hon. James C. Eaton, circuit judge and an order denying post-conviction relief in the same court, Hon. Frederick A. Henderson, circuit judge, presiding.

After a jury trial the defendant was convicted of intentionally concealing two of his minor children from their other parent contrary to sec. 946.715(1)(a), Stats.[2] Mr. McCoy contends that the language in sec.

---

[1] *State v. McCoy,* 139 Wis. 2d 291, 407 N.W.2d 319 (Ct. App. 1987).

[2] Section 946.715 of the Wisconsin Statutes, **Interference by parent with parental rights of other parent** (1985–86), reads:

(1) Any parent, or any person acting pursuant to directions from the parent, who does any of the following is guilty of a Class E felony:

(a) Intentionally conceals a minor child from the child's other parent;

(b) After being served with process in an action affecting the family but prior to the issuance of a temporary or final order determining custody rights to a minor child, takes or entices the child outside of this state for the purposes of depriving the other parent of physical custody as defined in s. 822.02(9); or

(c) After issuance of a temporary or final order specifying joint custody rights, takes or entices a child under the age of 14 from the other parent in violation of the custody order.

(2) No person violates sub. (1) if the action:

946.715(2)(a), permitting concealment taken to protect a child from "imminent physical harm," is unconstitutionally vague. He further alleges that the circuit court's instruction regarding this privilege, which stated that the defendant had to reasonably believe that "immediate" intervention was "necessary" to protect the children from imminent physical harm, was erroneous. We disagree and affirm the decision of the court of appeals.

There is substantial dispute between the parties regarding many facts pertinent to this case. In 1983, John and Luella McCoy were living as husband and wife with their three minor children. At trial, evidence was presented by Mr. McCoy that he and his wife were not "getting along" and had not for some time. He testified that his wife had physically abused the children, getting so angry that "she would backhand them and sometimes she would burst their nose open or parts of their face," and would tell the children she was going to kill them. Mr. McCoy stated that he felt she would kill the children and that they were afraid of her and would run from her. He then would grab his wife and hold her while she was "ranting and screaming" until she would calm down. This conduct happened three or four times a month according to Mr. McCoy. He testified that he felt the problems between his wife and children were becoming worse and that their oldest child was very nervous and "rock[ed] all of the time." Mrs. McCoy testified that she had never physically abused the children.

 (a) Is taken to protect the child from imminent physical harm;

 (b) Is taken by a parent fleeing from imminent physical harm;

 (c) Is consented to by the other parent; or

 (d) Is otherwise authorized by law.

On August 5, 1983, Mr. and Mrs. McCoy verbally argued concerning the cleanliness of the children. Mr. McCoy testified that his wife told him she could use the youngest child for drawing welfare support, that she didn't want to see him and the other children any more, and that he could take them and get out. Mrs. McCoy testified that Mr. McCoy had called her "terrible names" that day, but she had never told the defendant he could take the children.

Later that morning, a neighbor drove the two older children to Bible school. Mr. McCoy met his sons as school ended and left with them in his automobile. The parties' three month old child remained with Mrs. McCoy. Mr. McCoy testified at trial that he thought the children were in danger in the period shortly before and leading up to August, 1983. He also testified that he left his youngest son with his wife because she could not draw any welfare without him, and because she said she wasn't about to give him up. On cross-examination he stated that his wife did not strike or abuse the children on August 5th and that he took the two older children because his wife told him to take them, not because he felt they were in danger on that particular day.

The record shows that the defendant traveled with his children for over a year, stopping in Tennessee, Florida, Nevada and California. Mr. McCoy testified that he called his wife from Florida approximately eight to ten days after he left with the children and that she didn't ask to speak with them. Mrs. McCoy testified at trial that she first heard from Mr. McCoy about two months after he left and that he said he was in Tennessee. She further testified that he would not let her talk to their sons then or at any other time. At the preliminary hearing, Mrs. McCoy had testified

that her husband had called her from Minnesota approximately a month and a half after he left.

In May, 1984, Mrs. McCoy obtained a divorce and was awarded custody of all three children. Several months later, Mr. McCoy was charged with intentionally concealing the two older children from their mother. He was served with a warrant in California and subsequently returned to Wisconsin to stand trial.

At trial, defense counsel argued, among other things, that Mr. McCoy's actions were privileged because the children were in danger of imminent physical harm when he took them. At the close of the trial the judge instructed the jury on this matter, creating its own jury instruction since there was no pattern instruction for sec. 946.715, Stats., at the time.[3] The following instruction was read to the jury:

[3]The Wisconsin Criminal Jury Instruction Committee subsequently approved Instruction 1838—Interference With the Parental Rights of the Other Parent: Concealing a Child—sec. 946.715(1)(a), in December, 1987. This instruction was based primarily on language used in the court of appeals' decision which affirmed Mr. McCoy's conviction.

The following is to be added to the instruction when evidence sufficient to raise the issue is presented that the defendant acted to protect the child from imminent physical harm:

> Section 946.715(2) provides that a person does not violate this statute if the action is taken to protect the child from imminent physical harm. Before you may find the defendant guilty in this case, you must be satisfied beyond a reasonable doubt that the defendant did not conceal the child to protect the child from imminent physical harm.
>
> "Imminent" means "close," "near at hand," or "on the point of happening."
>
> "Physical harm" means injury to the body, that is, physical pain or injury, illness or impairment of physical condition.
>
> If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant was the parent of (name

Under Section 946 of the Criminal Code a parent is privileged to intentionally conceal a minor child from the child's other parent if he reasonably believes such concealment is necessary to protect the child from imminent physical harm . . .

The child is in imminent physical harm when he or she is faced with the danger likely to occur at any moment or which is threateningly or menacingly near at hand.

Physical harm means bodily harm, that is, physical pain or injury, illness or any other impairment of physical condition. If the defendant reasonably believes that his immediate intervention was necessary to protect the children from imminent physical harm, then he was privileged to conceal the children from Luella McCoy.

In order for the defendant's conduct to be privileged under the law the defendant must have reasonably believed: 1) that the children were in imminent physical danger and, 2) that his intervention was necessary for their protection.

The reasonableness of the defendant's belief with regard to the matters mentioned must be determined from the standpoint of the defendant at the time of his acts and not from the viewpoint of the Jury now. In other words, the standard is what a person of ordinary intelligence and prudence would have done in the position of the defendant under the circumstances existing at the time of the alleged offense. . . .

of child) and intentionally concealed (name of child) from the child's other parent [and that the defendant did not conceal the child to protect (him) (her) from imminent physical harm], you should find the defendant guilty.

If you are not so satisfied, you must find the defendant not guilty. (Footnotes omitted.)

Therefore, before you can find the defendant guilty of the offense charged in the Information you must be satisfied beyond a reasonable doubt from the evidence in this case that the concealment of each child from Luella McCoy was not privileged under the law that one (1) may take a child to protect him or her from imminent physical harm.

The jury found the defendant guilty of concealing a child contrary to sec. 946.715(1)(a), Stats. Motions for acquittal notwithstanding the verdict, new trial, and reduction of sentence were denied, and a judgment of conviction was entered.

The defendant appealed and the court of appeals affirmed the conviction. The court of appeals concluded that the statute was not unconstitutionally vague. It further held that the "necessary" and "immediate" language used by the circuit court in its instruction constituted harmless error because whether "immediate" intervention was required and whether concealment was "necessary" were not disputed issues. The defendant then petitioned this court for review.

The first issue raised by the defendant is that the phrase "imminent physical harm" in sec. 946.715, Stats., is unconstitutionally vague because it fails to give fair notice to a person bent on compliance with the statute, and fails to provide sufficient standards by which courts may apply this statute. The state contends that because the defendant failed to raise the issue of whether the statute is unconstitutionally vague at trial he has no right to review of this issue on appeal.

"Consideration of a constitutional issue raised for the first time on appeal is discretionary with this

court. 'This court has consistently held that it will not entertain a constitutional issue raised for the first time on appeal unless there [are] some compelling reasons for doing so.'" *State v. Wilks,* 121 Wis. 2d 93, 107, 358 N.W.2d 273, 280 (1984) (citations omitted). We conclude the facts of this case present a compelling basis for review of issues of first impression regarding the interpretation of sec. 946.715, Stats.

Addressing the test for constitutionality of a statute challenged on vagueness grounds this court has stated, "[s]tatutes are presumed constitutional and must be proved unconstitutional beyond a reasonable doubt. ... A statute is not void for vagueness '[u]nless [it] is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty.'" *State ex rel. Smith v. Oak Creek,* 139 Wis. 2d 788, 802, 407 N.W.2d 901, 907 (1987) (citations omitted). To meet the requirements mandated by due process a "criminal statute must be sufficiently definite to give a person of ordinary intelligence who seeks to avoid its penalties fair notice of the conduct required or prohibited," and to allow law enforcement officers, judges, and juries to objectively apply the law to defendant's conduct without creating or applying their own standards to determine guilt. *State v. Popanz,* 112 Wis. 2d 166, 173, 332 N.W.2d 750, 754 (1983).

> The test does not demand that the line between lawful and unlawful conduct be drawn with absolute clarity and precision. ... "[T]he practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty

can be demanded." *State v. Courtney,* 74 Wis. 2d 705, 710–11, 247 N.W.2d 714, 718 (1976). (Citations omitted.)

The portion of sec. 946.715, Stats., objected to by the defendant provides:

**Interference by parent with parental rights of other parent. (1)** Any parent, or any person acting pursuant to directions from the parent, who does any of the following is guilty of a Class E felony:

(a) Intentionally conceals a minor child from the child's other parent; ...

**(2)** No person violates sub. (1) if the action:

(a) Is taken to protect the child from *imminent physical harm;* ... (Emphasis added.)

The phrase "imminent physical harm" is not defined in sec. 946.715, and this exact wording does not appear in any other place in the Wisconsin Statutes.[4] A statute is not unconstitutional, however, merely because it fails to define all its terms, or "because the boundaries of the prohibited conduct are somewhat hazy." *State v. Wickstrom,* 118 Wis. 2d 339, 352, 348 N.W.2d 183, 190 (Ct. App. 1984). A statute is

---

[4]A number of statutes in Wisconsin do, however, use the term "imminent" in relation to harm or danger. *See* secs. 23.57(1)(c) ("imminent bodily harm"), 50.03(5m)(a)6 ("imminent danger of death or serious physical or mental harm"), 50.05(1)(a)3c ("imminent danger of death or serious physical or mental harm"), 100.42(3) ("unreasonable risk of injury or imminent hazard"), 127.17(2)(a) ("clear and imminent harm"), 144.026(7) ("imminent harm"), 939.47 ("imminent death or great bodily harm"), 939.48(1) ("imminent death or great bodily harm"). None of these statutes define the term "imminent" or have ever been challenged on the ground that use of this term created unconstitutional vagueness.

sufficiently definite if the meaning of its terms can be discerned by referring to ordinary sources of construction. *State v. Hill,* 91 Wis. 2d 446, 454, 283 N.W.2d 451, 454 (Ct. App. 1979).

Section 990.01, Stats., provides the general rule for defining words used in the construction of Wisconsin laws: "All words and phrases shall be construed according to the common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." The word "imminent" is not a technical term that requires legal expertise to comprehend its meaning. Therefore, a common and approved meaning may be ascertained for this word by reference to a recognized dictionary. *State v. Bleck,* 114 Wis. 2d 454, 463, 338 N.W.2d 492, 497 (1983).

*Webster's Third New International Dictionary* 1130 (16th ed. 1976), defines "imminent" as "ready to take place; near at hand; impending; hanging threateningly over one's head; menacingly near." This term evidences the legislature's intent that concealment may be privileged when harm is of an impending nature, rather than requiring occurrence of actual harm before resort to prompt concealment to protect a child.

The phrase "physical harm" does not expressly appear in *Black's Law Dictionary* but the phrase "physical injury" is defined as "bodily harm or hurt, excluding mental distress, fright or emotional disturbance," and the word "physical" as "relating or pertaining to the body, as distinguished from the mind or soul or the emotions." *Id.* at 1304 (4th rev. ed. 1968). This court has previously addressed the meaning of the term "bodily harm," defining it as synonymous

with "'physical injury' or 'impairment of physical condition.'" *Flores v. State,* 76 Wis. 2d 50, 58–59, 250 N.W.2d 720 (1977). Section 939.22(4), Stats., also defines "bodily harm" as "physical pain or injury, illness, or any impairment of physical condition." The "physical harm" language of sec. 946.715, limits, to a reasonable degree of certainty, the type or nature of harm which must be imminent before the privilege to conceal arises.

■

The phrase "imminent physical harm" is not composed of technical words having a peculiar meaning in the law but is, as the court of appeals correctly determined, "composed of terms commonly used and understood by the general populace." *McCoy,* 139 Wis. 2d at 296, 407 N.W.2d at 322. We conclude that the challenged phrase is sufficiently definite, in accordance with common usage and understanding, to meet constitutional standards. It gives reasonable notice of proscribed conduct to persons bent on obedience of the law and to those who must apply it. It is, therefore, not void for vagueness.

The second issue raised by the defendant is that the circuit court's instruction regarding concealment taken to protect a child from imminent physical harm was erroneous. Four specific errors are alleged concerning the language the court used to describe this privilege.

In part, the defendant contends error exists because the court established too stringent a test. He argues that the terms "necessary" and "immediate" appear nowhere in sec. 946.715, Stats., and their use in the jury instructions imposed a greater burden than should be placed upon a defendant before this privilege would exempt him from criminal liability.

The court of appeals agreed with this argument but determined that use of these words constituted harmless error. The state, in argument before this court, suggests that the "reasonably necessary" standard articulated by the circuit court is appropriate to apply for sec. 946.715, and that "immediate" is sufficiently synonymous with "imminent" that no error occurred when the court substituted this term in the instruction.

"[A] trial judge may exercise wide discretion in issuing jury instructions based on the facts and circumstances of the case. ... This discretion extends to both choice of language and emphasis." *State v. Vick,* 104 Wis. 2d 678, 690, 312 N.W.2d 489, 495 (1981) (citations omitted). The court's discretion should be exercised to "fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." *State v. Dix,* 86 Wis. 2d 474, 486, 273 N.W.2d 250, 256 (1979). A jury determination is considered tainted if a jury charge is given in such a manner that a reasonable juror could misinterpret the instructions to the detriment of a defendant's due process rights. *State v. Schultz,* 102 Wis. 2d 423, 426–27, 307 N.W.2d 151, 154 (1981).

Defendant argues that the term "necessary" imposes a higher burden than an instruction which does not use that term based on an analogy to the line of cases which discuss custody changes in divorce actions. The test initially articulated in *Millikin v. Millikin,* 115 Wis. 2d 16, 339 N.W.2d 573 (1983), holding that statutory language requiring action "necessary to the best interests of the child" be construed

as imposing a greater burden than language requiring only the "best interests of the child" to be considered, is inapposite to the law in this case. Not only is the language in *Millikin* distinguishable because it concerned a civil, rather than criminal, standard, but the *Millikin* "necessary to the best interests of the child" test would impose an even lesser burden on a defendant than the express language of sec. 946.715, Stats. In *Millikin,* the court held: "'[N]ecessary' does not mean that the child need be in impending or immediate danger of life, health, or safety." *Id.* at 23, 339 N.W.2d at 576. Section 946.715, specifically requires that harm be "imminent." The analogy suggested by the defendant is, therefore, unsupportable.

While recognizing that sec. 946.715, Stats., does not expressly articulate the level of objective or subjective belief a person must hold before the privilege to conceal arises; an analysis of this statute supports a finding that a reasonable person standard was intended. Subsection (1) of the statute evidences the legislature's broad concern for deterrence of parental child snatching, regardless of the marital status of the parents, creating a remedy for the other parent by imposing felony sanctions. Subsection (2) expressly exempts a person from liability when providing protection for minor children who are in danger of imminent physical harm. We conclude that both provisions can only be harmonized by imposing a reasonableness standard on action taken to protect a child from imminent harm.

The language of this statute encourages the maintenance of parental rights against unlawful interruption. A test, as proposed by the defendant, based strictly on subjective belief would vitiate this

purpose, permitting a child to be concealed any time harm seemed imminent to a parent, no matter how irrational the belief. This court has determined that an interpretation which fulfills the objectives of a statute is to be favored over an interpretation which would defeat legislative objectives. *Belleville State Bank v. Steele,* 117 Wis. 2d 563, 570, 345 N.W.2d 405, 409 (1984). A subjective standard would not serve the objectives of this statute.

Additionally, there is nothing in the wording of the statute or legislative history to suggest that the privilege of concealment created by sec. 946.715(2)(a) should be treated differently from other statutory criminal defenses. Under sec. 939.45, Stats., conduct privileged by statutory law of this state as a defense to prosecution is enumerated along with other defenses to criminal liability such as self-defense, defense of others, accomplishment of lawful arrest, and discipline by parent or person in place of a parent. The pattern jury instructions for these other defenses all apply the reasonableness standard in assessing whether use of the privilege is appropriate. *See* Wis. J.I.—Criminal 800, 805, 825, 830, 880, 885, 950, and 955. Language requiring the defendant's actions to be "reasonably necessary" in the jury instruction used by the circuit judge in this case properly reflected the treatment of this privilege as a statutory defense. *See Moes v. State,* 91 Wis. 2d 756, 765–66, 284 N.W.2d 66, 70 (1979).[5]

---

[5]Of the other states which have created a statutory affirmative defense or privilege to conceal a child when protecting that child from harm, none uses wording identical to that adopted in Wisconsin. All articulate legislative concern, however, for protec-

Finally, we note that the wording the defendant requested in proposed jury instructions regarding the concealment privilege presented to the circuit judge for consideration was "that the defendant reasonably believed that the actions he was taking were *necessary* to protect the child" (emphasis added). The defendant has no ground on appeal, therefore, to challenge use of the term "necessary" when this was precisely the language that he requested the circuit court adopt.

As a second error, the defendant contends the word "immediate" imposes a greater burden on a defendant than required by sec. 746.715(2)(a), which requires only that the physical harm to the child be

tion of a child in express or inferable terms of reasonableness. *See* Cal. Penal Code sec. 277 ("necessary to protect the child from immediate bodily injury or emotional harm"); Colo. Rev. Stat. sec. 18–3–304(3) ("necessary to preserve the child from danger to his welfare"); Fla. Stat. Ann. sec. 787.03(2)(a) ("reasonably believes that his action was necessary to preserve the child . . . from danger to his welfare"); Md. Ann. Code FL sec. 9–306 ("clear and present danger to the health, safety, or welfare of the child"); Minn. Stat. sec. 609.26(2) ("taken to protect the child from physical or sexual assault or substantial emotional harm"); N.H. Rev. Stat. Ann. sec. 633:4(III) ("acting in good faith to protect the child from real and imminent physical danger"); N.J. Stat. Ann. sec. 2C:13–4(a)(1) ("necessary to preserve the child from danger to its welfare"); N.Y. [Penal] sec. 135.50(2) ("necessary in an emergency to protect the victim because he has been subjected to or threatened with mistreatment or abuse"); Ohio Rev. Code Ann. sec. 2905.04(b) ("reasonably believed his conduct was necessary to preserve the child's health or welfare"; comment to this section further requires the action be "based on actor's good faith belief" of necessity); 18 Pa. Cons. Stat. Ann. sec. 2904(b)(1) (Purdon) ("necessary to preserve the child from danger to its welfare"); Wyo. Stat. sec. 6–2–204(c) ("necessary to preserve the child from an immediate danger to his welfare").

"imminent." Such a conclusion is an erroneously narrow interpretation of the two words taken out of context of the jury instruction.

*Black's Law Dictionary* does make a slight distinction between the words, defining the term "imminent" as "mediate rather than immediate." *Id.* at 884 (4th rev. ed. 1968). A word may have a variety of recognized meanings, however, and its precise meaning must be found in its context and relation to a statute's subject matter. *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969). The term "immediate" is defined in *Black's Law Dictionary* as "either instantly or without any considerable loss of time. A reasonable time in view of particular facts and circumstances of [the] case under consideration." *Id.* at 884. The circuit court's use of the word "immediate" in the jury instruction in this case reflected, in conformity with the reasonableness standard, that concealment occur in close conjuncture of time with the impending harm to the child for the action to be privileged.

Moreover, the record shows that the word "immediate" appeared only once in the entirety of the court's jury instruction. The term "imminent" was fully and separately defined for the jury and used throughout the remainder of the instruction. Instructions to the jury are to be considered as a whole. *Robinson v. State,* 100 Wis. 2d 152, 165, 301 N.W.2d 429, 436 (1981). Viewed in its entirety, we conclude the jury instruction was not erroneous.

The defendant claims two final errors existed in the jury instruction because the court unduly limited the meaning of "imminent physical harm." First, the

defendant contends that the term "imminent" should have been described to the jury as including a continuing and projected harm, and second, that "physical injury" should have included emotional, as well as bodily, harm. We disagree.

Imbuing the term "imminent" with the broad meaning sought by the defendant would encourage unreasonable reliance on this privilege, rather than resort to legal remedies such as obtaining a restraining order. The manifest intent of this privilege is that a reasonable removal for purposes of safety be permitted but not to the exclusion of resort to the court system. Any other more extended concealment, though initially justified, would only victimize the child, wrongfully depriving the other parent of the opportunity to have contact with that child, and interfering in the child's relationship with the other parent.

Defendant's final argument that the term "physical harm" was unduly limited because it did not include emotional harm ignores the plain meaning of the words selected by the legislature. The legislature has in the past created statutes with specific reference to physical or emotional harm or both. *See, e.g.,* secs. 813.122(1)(a)1 and 813.122(1)(a)5, Stats. (child abuse expressly defined as including both "physical injury" and "emotional damage"). Legislative choice in limiting the privilege created in 946.715(2), to instances where "physical" harm is imminent should not be ignored.

After examination of the jury instruction given by the circuit court in this matter we conclude that the

circuit judge did not abuse his discretion in issuing this jury instruction.

Children unfortunately are often the pawns in the domestic struggles between their parents. One parent may try in various ways to turn a child away from the other parent by ridicule or lies, hoping to deprive the mate, whom they now see as their enemy, of one of life's great treasures, the love and respect of one's own child. Of greater hurt is to be deprived of even the physical presence and company of one's child by the concealment of that child. In either of these situations the child is often bruised and torn mentally and emotionally by the struggle between the natural objects of the child's own affections, their mother and father. *See* Agopian and Anderson, *Legislative Reforms to Reduce Parental Child Abductions,* 6 J. Juv. L. 1, 2–3 (1982); *Oversight Hearing on the Parental Kidnaping Prevention Act of 1980 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 97th Cong., 1st Sess. 1 (1981) (statement of Representative William J. Huges, chairman of the subcommittee) ("child snatching is one of the most serious and damaging forms of child abuse that exists. The severity of the trauma of child snatching is one of the few points that behavioral scientists agree upon, almost without exception."). The law has few tools to combat the snide remarks and innuendoes that one parent may use to hurt the other parent in the child's eyes. But the law can punish and hope thereby to prevent or reduce the harm that comes to children and their other parent from parental kidnapping and concealment. The Wisconsin legislature has wisely chosen, under sec. 946.715, Stats., to make such activities a crime unless circumstances in a particular case justify such drastic action.

Unfortunately, child abuse by some parents is a too frequent occurrence. All parent-child relationships are not idyllic and loving. The legislature has wisely provided that concealment of a child by one parent from the other parent is justified if done "to protect the child from imminent physical harm." Section 946.715(2)(a), Stats.

When parents have reached an impasse in their relationship to each other and with their children, the resolution in a civilized society should be made by institutions established for such purpose. In our society we have given that duty to the court system. It is in the courts that disputes such as presented here should be resolved except in those situations where action is required by one parent to protect a child from imminent physical harm.

The facts in this case as found by the jury did not warrant such intervention by the defendant. The circuit court and the court of appeals properly upheld that verdict.

*By the Court.*—The decision of the court of appeals is affirmed.