STATE of Wisconsin, Plaintiff-Respondent,

v.

George M. OSTENSEN, Defendant-Appellant. †

Court of Appeals

*Nos. 88–1681–CR, 88–2234–CR. Submitted on briefs April 6, 1989.—Decided May 2, 1989.*

(Also reported in 442 N.W.2d 501.)

†Petition to review denied.

For defendant-appellant there were briefs by *Susan Hedman,* of Wheaton, Maryland.

For plaintiff-respondent there was a brief by *Donald J. Hanaway,* attorney general, and *Sally L. Wellman,* assistant attorney general, of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   George Ostensen was found guilty by a jury of sabotage contrary to sec. 946.02(1)(a), Stats.,[1] for his activities at the United States Navy's Project ELF (extremely low frequency) submarine com-

---

[1] Sec. 946.02(1)(a) reads in part:

Whoever does any of the following is guilty of a Class C felony:
   (a) Intentionally damages . . . any property with reasonable grounds to believe that his act will . . . interfere with . . . the preparation for defense . . . by the United States . . ..

munication facility. He appeals the judgment of conviction and postconviction order denying relief, maintaining that the trial court abused its discretion by refusing to accept his proposed jury instructions. Because Ostensen's proposed instructions and those actually submitted were substantively identical and accurately reflected the law, we affirm.

Ostensen entered the ELF facility and demonstrated his opposition to the project by, among other things, cutting down transmission poles, spray-painting peace signs and slogans on poles and buildings, hanging anti-war banners, pouring his blood and sprinkling ashes on wiring, and damaging electrical boxes. His activities resulted in an order to shut down the facility for twenty-nine hours, potentially depriving United States submarines on duty throughout the world of vital communications unless they surfaced. When he reached the central administration building, he was asked to leave the ELF grounds. When he refused to discontinue his activities, Ashland County law enforcement officials arrested him.

Ostensen was charged with two counts of sabotage: intentional damage to property with reasonable grounds to believe that his acts would interfere with the preparation for defense of the United States. The trial court allowed extensive testimony on the history of American nuclear defense policy, the destructive power of nuclear weapons, international law, and the role civil disobedience has played throughout history. Ostensen presented evidence in support of his belief that the ELF facility could be used to signal Trident submarines to launch a nuclear first strike and thus encourage a preemptive attack on the United States to prevent it. He maintained that this scenario actually detracted from rather than enhanced the nation's defense. The navy presented evidence of the defensive nature of the facility.

At the instruction conference, Ostensen requested the following instruction on the sabotage charge:

> Before the defendant may be found guilty of sabotage, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present.
>
> First, that the defendant intentionally damaged property.
>
> Second, that the defendant had reasonable grounds to believe his act would interfere with the preparation for defense by the United States.
>
> . . ..
>
> The second element of this offense requires that a reasonable person, knowing only what the defendant knew at the time he acted, would necessarily conclude that his act would interfere with the preparation for defense by the United States.
>
> Regardless of whether the defendant's knowledge at the time he acted was limited to erroneous facts, you must consider only those facts known to the defendant at the time he acted.
>
> In other words, would a reasonable person knowing only what the defendant knew at the time he acted necessarily conclude that his act would interfere with the preparation for defense by the United States.

The instruction the trial court actually submitted to the jury read:

> Before the defendant may be found guilty of sabotage the State must prove by evidence which satisfied you beyond a reasonable doubt that the following two elements are present. First, that the defendant intentionally damaged property.
>
> Second, that the defendant had reasonable grounds to believe his act would interfere with the preparation for defense by the United States.

. . ..

The second element of this offense requires that the defendant had reasonable grounds to believe that his act would interfere with the preparation for defense by the United States.

Reasonable grounds to believe means what a reasonable person would have believed knowing only the facts defendant knew at the time he did the act.

. . ..

Now, there is evidence that at the time of the alleged offense the defendant believed that his action would not interfere with the preparation for defense by the United States[.] [I]f an honest error of fact results in a person's not having the required knowledge required for a crime, the person is not guilty of that crime. Before you may find that the knowledge required for this offense is present the State must prove by evidence that satisfies you beyond a reasonable doubt that the defendant had reasonable grounds to believe that his act would interfere with the preparation for defense by the United States.

The jury found Ostensen guilty of one count of sabotage. Ostensen appeals, contending that the trial court abused its discretion when it denied his proposed instruction and instead submitted instructions that inaccurately stated the law. We disagree and conclude that the trial court properly instructed the jury on the elements of sabotage.

■■■■

The trial court has discretion in instructing the jury, as long as the court fully and fairly states the legal rules and only instructs on matters the evidence supports. *State v. McCoy,* 143 Wis. 2d 274, 289, 421 N.W.2d 107, 112 (1988). If the instructions given comport with the facts and are a correct statement of the law, we will

not find error. *See State v. Vick,* 104 Wis. 2d 678, 690–91, 312 N.W.2d 489, 495 (1981).

Ostensen concedes that his actions met the first element of the crime, intent to damage property. However, he claims that the submitted instructions misstated the second element of the crime by setting forth an objective standard rather than a subjective one. Ostensen seems also to argue that if he did not intend or believe his actions would interfere with preparation for defense, acquittal is mandatory. Apart from the fact that his proposed instruction did not so provide, the statute does not require proof of the actor's subjective intent to interfere. Rather, it requires merely that a reasonable person, acting with the defendant's knowledge, has grounds to believe it will. With these standards in mind, we are unable to ascertain a substantive difference between the instructions the trial court submitted to the jury and those Ostensen proposed.

Aside from grammatical variations and redundancies, the proposed instructions and the ones submitted were identical. Both applied a "reasonable person" standard, tempered by the caveat that the jury must determine what this reasonable person would conclude given Ostensen's factual base. That is, the jury was only to consider the facts that Ostensen knew at the time he acted. In addition, both instructions emphasized that Ostensen was not to be found guilty if he relied on facts that were later found to be erroneous. Ostensen's only objection to the sabotage elements at the instruction conference was a concern the court's instruction did not sufficiently stress that Ostensen was not guilty if the jury found that he relied on erroneous facts. The submitted instructions addressed this concern. The only varia-

661

tion between the two instructions was the omission from the submitted instructions of language that repeated previously stated language. A trial court acts within its discretion when it refuses to submit instruction language that is superfluous or redundant. *See United States v. Cina,* 699 F.2d 853, 863 (7th Cir. 1983).

We acknowledge the role civil disobedience has played throughout our nation's history. This country's founders rebelled against unfair taxes imposed by the crown at the Boston Tea Party, encouraged by Thomas Paine. In the mid-nineteenth century, Henry David Thoreau, by refusing to pay taxes, personally repudiated his government for fostering a repugnancy called slavery. In the 1960's, the Reverend Martin Luther King, Jr., directly confronted unjust, discriminatory laws through an orchestrated protest of nonviolent resistance. "Moral motivations have frequently prompted citizens to violate laws they personally consider unjust." *United States v. Dorell,* 758 F.2d 427, 435 (9th Cir. 1985) (Ferguson, J., concurring). Ostensen views his conduct as an extension of this tradition when protesting America's nuclear military policy. Assuming without deciding that Ostensen was motivated by only the loftiest beliefs and that his actions were nonviolent, we note that "Gandhi often demonstrated, both in his writings and his actions, that the person who commits civil disobedience must 'cheerfully suffer imprisonment,' and 'show the strictest and willing obedience to gaol discipline.' " *Civil Disobedience: Theory and Practice* 19 (H. Bedau ed. 1969) (quoting M. Gandhi, *Non-violent Resistance,* 4, 60 (1961)).

*By the Court.*—Judgment and order affirmed.