J-A06040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIA EVELIA CABRERA-GUTIERREZ | : | |
| | : | |
| Appellant | : | No. 1315 MDA 2018 |

Appeal from the Judgment of Sentence Entered July 17, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0005262-2017

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED APRIL 16, 2019**

This is an appeal from a judgement of sentence entered by the Court of Common Pleas of Berks County (trial court) imposing a sentence on Maria Evelia Cabrera-Gutierrez (Cabrera–Gutierrez) for one count of Interference with Custody of Children, 18 Pa.C.S. § 2904(a), and one count of Concealment of Whereabouts of a Child, 18 Pa.C.S. § 2909(6).  The issue in this case is whether the trial court abused its discretion by precluding evidence regarding abuse or deficient parenting by the child's biological father, Guy Markus (Markus).  Finding no abuse of discretion in precluding such evidence, we affirm.

The underlying facts are not in dispute.  Cabrera-Gutierrez and Markus have a child in common who was born in 2012.  In 2014, Markus filed a petition in the trial court seeking shared custody of the child.  A temporary custody

_____
*   Retired Senior Judge assigned to the Superior Court.

order granted Markus custody of the child overnight every Wednesday and on alternating weekends. Later, Markus filed a petition seeking partial custody, specifically seeking more overnights. A hearing was held on November 3, 2014, but the custody judge did not immediately issue an order and the existing order remained in place.

In accordance with the existing custody order, Markus had the child on Wednesday, November 12, 2014, and returned him the next morning. However, when Markus arrived at Cabrera-Gutierrez's apartment on Friday, November 14, 2014, to take the child for his scheduled weekend, neither Cabrera-Gutierrez nor the child were present. Instead, Cabrera-Gutierrez left a note which read, "As soon as I get legal help, I will be in contact with you. Thanks, Maria." (J.T. at p. 53). Markus immediately contacted police and his attorney. The following Monday, Markus appeared before the custody judge and obtained an order giving him full custody of the child. The judge also issued a warrant for Cabrera-Gutierrez's arrest.

On November 13, 2014, Cabrera-Gutierrez purchased bus tickets: one for herself, one for her child from a previous relationship and one for the child in common with Markus to travel from Reading, Pennsylvania to San Antonio, Texas. Approximately three years later, on September 17, 2017, Cabrera-Gutierrez was featured on the television show "The Hunt," which resulted in several tips from the area of Raymond, Washington leading to her

apprehension. The child was also located and Markus flew to Washington the next day to retrieve the child.

Cabrera-Gutierrez was extradited to Pennsylvania and charged with one count of Interference with Custody of Children, 18 Pa.C.S. § 2904(a), and one count of Concealment of Whereabouts of a Child, 18 Pa.C.S. § 2909(6). Both provisions contain defenses to each offense. Regarding Interference with Custody of Children, a defense is available where "the actor believed that his action was necessary to preserve the child from danger to its welfare." 18 Pa.C.S. § 2904(b)(1). The charge of Concealing the Whereabouts of a Child contains a similar defense, providing the language, "unless concealment is … a reasonable response to domestic violence or child abuse." 18 Pa. C.S. § 2909(a).

Prior to trial, the Commonwealth filed a motion *in limine* seeking to bar allegations of abuse or deficient parenting by the child's biological father that allegedly occurred prior to the custody trial of November 3, 2014. This included photographic evidence purportedly showing the child's injuries after being in Mr. Markus' care and Cabrera-Gutierrez's testimony regarding two years of alleged physical abuse of the child. She also was prepared to testify that Markus sexually forced himself on her multiple times, he threatened to cause a miscarriage by physical force, and he once broke her ribs; and about her Protection from Abuse Order (hereinafter "PFA") and how she endured an abusive relationship with Markus for over five years.

The trial court granted the Commonwealth's motion, finding that Cabrera-Gutierrez's proposed testimony was not relevant because those matters had been previously raised in the custody proceedings and the custody judge found that she had been manipulating the system and the issue of child abuse has been litigated to its fullest. In her 1925(a) opinion, the trial court, citing to **Commonwealth v. Couch**, 731 A.2d 136 (Pa. Super. 1999), found when she fled, the child was not in immediate danger, especially when there was a hearing that week on the custody matter and that no immediate danger was found.

The matter then went to trial before a jury who found Cabrera-Gutierrez guilty of both counts and, the same day, the trial court imposed an aggregate sentence of 15 to 48 months' imprisonment followed by 5 years of probation. This appeal followed.[1]

_____

[1] "In evaluating the denial or grant of a motion in limine, our standard of review is the same as that utilized to analyze an evidentiary challenge. **Commonwealth v. Pugh**, 101 A.3d 820, 822 (Pa. Super. 2014). It is well settled that 'the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion.' **Commonwealth v. Woodard**, 129 A.3d 480, 494 (PA. 2015) (citation omitted). 'An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.' **Id**. (citation omitted). 'The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.' Pa.R.E. 403." **Commonwealth v. Hicks**, 151 A.3d 216, 224 (Pa. Super. 2016), **appeal denied**, 168 A.3d 1287 (PA. 2017).

On appeal, Cabrera–Gutierrez contends that the trial court abused its discretion by finding the testimony concerning domestic and child abuse not relevant by improperly applying **Couch** to limit the evidence to only incidences of such abuse occurring after November 3, 2014, the date of the child custody hearing.

In **Couch**, we held that a defendant who wishes to assert this defense under 18 Pa.C.S. § 2904(b)(1) must show that the danger to the child was so immediate that normal legal procedures would not suffice to protect the child, stating that:

> Custody law provides for certain procedures to be followed in a civil action to challenge custody if a party believes that the best interests of the child are not being met by the primary custodian. Therefore, in order for the statutory justification defense to apply to a criminal offense of taking and concealing a child, there must be some instant danger present such that to follow the prescribed civil procedures would threaten the immediate welfare of the child.

**Couch**, 731 A.2d at 144.

Our holding in **Couch** is based on the same reasoning that was used by the Wisconsin Supreme Court when it addressed a similar issue in **State v. McCoy**, 143 Wis.2d 274, 421 N.W.2d 107 (1988).[2]  The Wisconsin statute at issue in that case provided a defense for custodial interference if the abduction

_____

[2] We recognize that this Court is not bound by the decisions of other states' courts; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law.  **See Eckman v. Erie Ins. Exchange**, 21 A.3d 1203, 1207 (Pa. Super. 2011).

is motivated by the intent to protect the child from "imminent physical harm."

In **McCoy**, the Wisconsin court rejected the suggestion that "imminent" harm should be interpreted to include any "continuing and projected harm." The court explained that if the statute were construed in the manner the defendant suggested, this would prompt parents and relatives to disregard custody decrees and to engage in self-help:

> Imbuing the term "imminent" with the broad meaning sought by the defendant would [dis]courage ... resort to legal remedies such as obtaining a restraining order. The manifest intent of this [defense] is that a reasonable removal [of a child] for purposes of safety [will] be permitted[,] but not to the exclusion of resort to the court system. Any other more extended concealment, though initially justified, would only victimize the child, wrongfully depriving the other parent of the opportunity to have contact with that child, and interfering in the child's relationship with the other parent.

**McCoy**, 421 N.W.2d at 114.

The Wisconsin court went on to explain the underlying rationale of its interpretation of the statute:

> Children unfortunately are often the pawns in the domestic struggles between their parents. One parent may try ... to deprive [their] mate, whom they now see as their enemy, of one of life's great treasures, ... the physical presence and company of one's child by the concealment of that child.... The severity of the trauma of child snatching is one of the few points that behavioral scientists agree upon, almost without exception.").... The [Wisconsin] legislature has wisely provided that concealment of a child by one parent from the other parent is justified [only] if done "to protect the child from imminent physical harm."

> When parents have reached an impasse in their relationship to each other and with their children, the resolution in a civilized society should be made by institutions established for such purpose. In our society we have given that duty to the court

system. It is in the courts that disputes such as presented here should be resolved except in those situations where action is required by one parent to protect a child from imminent physical danger.

*McCoy,* 421 N.W.2d at 114-15.

In this case, the child custody hearing was held several days before in which Cabrera–Gutierrez had the opportunity to raise any claims about immediate danger or unfitness of Markus. As we stated in **Couch**, only when the custody process is inadequate to protect against immediate harm and absent some showing of immediate physical danger to the child, the statutory defenses to the charges are not available.

Order Affirmed.

Judge Ott concurs in the result.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/16/2019