STATE of Wisconsin, Plaintiff-Appellant,

v.

Monica MIGLIORINO and Edmund Bond Miller, Defendants-Respondents. [Case No. 88-0426-CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Anne HAINES, Christine LeBlanc, Carol Robbins, Mary Lou Gagnon, Claude Gagnon, Jr., Monica Migliorino, Thaddeus Bryl, Robert Braun and Robert Holmberg, Defendants-Appellants. [Case No. 88-1147-CR.]

Supreme Court

*Nos. 88-0426-CR, 88-1147-CR. Argued June 1, 1989.—Decided June 28, 1989.*

(Also reported in 442 N.W.2d 36.)

513

514

For the State of Wisconsin there were briefs (in court of appeals) by *Jeffrey A. Kremers,* special prosecutor for Milwaukee county, and *Fox, Carpenter, O'Neill & Shannon, S.C.,* Milwaukee, and oral argument by *Mr. Kremers.*

For the defendants-respondents in case no. 88-0426-CR there was a brief (in court of appeals) by *Ronald L. Wallenfang* and *Quarles & Brady,* Milwaukee, and oral argument by *Mr. Wallenfang.*

For the defendants-appellants, Anne Haines and Robert Braun, in case no. 88-1147-CR there were joint briefs (in court of appeals) by *Eugene R. Pigatti,* assistant state public defender, and *Michael A. Bowen* and *Foley & Lardner,* all of Milwaukee, and oral argument by *Mr. Pigatti* and *Mr. Bowen.*

Amicus curiae brief (in court of appeals) in case no. 88-0426-CR was filed by *Thomas G. Cannon* and *O'Neill, Cannon & Hollman, S.C.,* Milwaukee, for St. Thomas More Lawyers Society of Wisconsin.

DAY, J. This opinion, among other things, addresses the constitutionality of sec. 943.145, Stats. 1987-88 (Criminal trespass to a medical facility).[1] The

[1] Section 943.145, Stats., provides:

**943.145 Criminal trespass to a medical facility. (1)** In this section, "medical facility" means a hospital under s. 50.33(2) or a

issue comes to us as a certification by the court of appeals pursuant to sec. 809.61 of two consolidated cases:[2] *State v. Migliorino* and *State v. Haines.* In *Migliorino,* the circuit court for Milwaukee county, Honorable Thomas P. Doherty, judge, held sec 943.145 unconstitutional and dismissed charges against Monica Migliorino and Edmund Miller for its violation. In *Haines,* Anne Haines and eight others were convicted of violating the statute. The circuit court for Milwaukee county, Honorable Patricia McMahon, judge, held the statute constitutional.

The issues which both cases share, as phrased by the court of appeals in its certification, are:

> (1)　Is sec. 943.145, Stats., a nullity as applied to clinics or offices because the Medical Examining Board regulates personnel, not facilities, and the statute defines a clinic or office as one that is "subject to rules promulgated by the medical examining board for the clinic or office?" (2)　If the answer to the above question is no, is the statute constitutional?

We conclude sec. 943.145, Stats., is not a nullity and that it is constitutional. Accordingly, Judge McMahon's decision on the constitutionality of the statute is

clinic or office that is used by a physician licensed under ch. 448 and that is subject to rules promulgated by the medical examining board for the clinic or office that are in effect on November 20, 1985.

**(2)**　Whoever intentionally enters a medical facility without the consent of some person lawfully upon the premises, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class B misdemeanor.

**(3)**　This section does not prohibit any person from participating in lawful conduct in labor disputes under s. 103.53.

[2] An order for consolidation pursuant to sec. 809.10(3), Stats., was issued on December 13, 1988.

affirmed and Judge Doherty's holding on the same issue is reversed.

There are several additional issues presented in *Haines*: (3) Did the circuit court err by erroneously defining "consent" in the jury instructions? We conclude it did not. (4) Did the circuit court abuse its discretion by excluding certain questions in *voir dire* relating to prospective jurors' beliefs concerning abortion? We conclude it did not. (5) Did the circuit court err by excluding defendants' questions on cross-examination pertaining to subjects such as the number of abortions a testifying physician had performed and whether the associate director of the clinic believed there was anything wrong in what she did at the clinic? We conclude it did not. (6) Did the circuit court err by not permitting the defendants to introduce their proposed affirmative defenses of coercion and defense of others? We conclude it did not. (7) Did the circuit court err by refusing to honor a defendant's request to be sentenced rather than placed on probation? We conclude it did.

## STATE V. MIGLIORINO AND MILLER— FACTS

The facts as alleged in the criminal complaint are as follows: Ms. Migliorino and Mr. Miller were arrested in Affiliated Medical Services, a private medical facility. It is a clinic used by a physician licensed under ch. 448 of the statutes and is subject to the rules promulgated by the Medical Examining Board. Judge Doherty noted it was "allegedly an abortion clinic."

Migliorino sat next to people in the waiting room of the facility and began talking to them. They soon became upset because of Migliorino's actions. Miller attempted to enter a treatment area of the clinic but was

prevented from doing so by a locked door. He then began handing out literature which also caused people in the waiting room to become upset. The two were asked to leave but they continued their conduct. The police were called and the security guard for the building escorted the two from the premises. When Migliorino and Miller reached the clinic's door, the police arrived and they were arrested. Neither Migliorino nor Miller had obtained permission to enter into the facility.

Migliorino and Miller were charged in a criminal complaint with violating sec. 943.145, Stats. They moved to dismiss the complaint for two reasons: (1) Affiliated Medical Services was not a clinic subject to regulation by the Medical Examining Board and therefore sec. 943.145 was inapplicable; and (2) "the statute could not be constitutionally applied to reach [their] conduct." In a supplemental brief on the constitutionality issue, they also contended that sec. 943.145(3), the "labor dispute" subsection, was "content based discrimination" which made the statute unconstitutional.

In a written decision, Judge Doherty "believe[d] that Affiliated Medical Services qualifies as a medical facility and was intended to be a protected area under the statute." He also held, however, that sec. 943.145(3), Stats., unconstitutionally granted "labor a First Amendment right shared by no one else" and flew "directly in the face of *Carey v. Brown,* 447 U.S. 455 (1980) and *Police Dept. of Chicago v. Mosley,* 408 U.S. 92 (1972)." Consequently he dismissed the case. The State of Wisconsin (State) appealed and the court of appeals certified the case to us. We granted the certification.

## STATE V. HAINES, ET AL.—FACTS

In *Haines,* the facts are as follows: Ms. Haines and eight others (collectively hereafter known as the Defendants) were arrested for violating sec. 943.145, Stats., in the Bread and Roses Women's Health Center located in Milwaukee. The center provides various medical health services for women; including abortions.

On the day of the incident in question, the Defendants and several others met down the street from the building in which the health center was located on the seventh floor. They "straggled" into the building, signing in at a security guard's station on the ground floor. The group assembled in the elevator; some people had waited on other floors to join the rest in the elevator.

When they reached the seventh floor they immediately saw the glass wall and door demarcating the area occupied by the health center. The door was unlocked and open to the public. There were no signs which restricted entry. The group then entered the health center.

Two individuals from the group blocked the door to the facility and refused entry to anybody, including the police when they arrived later. Several others locked arms and blocked entry into the facility's medical treatment rooms. Four of the Defendants entered one treatment room and handcuffed themselves to various objects in that room. These Defendants had not brought the keys for the handcuffs and the police had to break the handcuffs to remove Defendants.

Defendants disrupted the health center's operations and they were asked by the associate director of the center to leave. The Defendants refused. When police arrived, Defendants also refused a request by the police to leave. The police then arrested Defendants and

removed them from the premises. Some of the Defendants had to be carried away in wheelchairs.

Defendants were charged with violating sec. 943.145, Stats. Several pretrial motions were filed by the Defendants, including a motion to dismiss because the statute was inapplicable and unconstitutional. This latter motion was denied.

A jury trial in the circuit court for Milwaukee county was held and Defendants were convicted of violating the statute. In *voir dire* and during the trial, Judge McMahon made several rulings which the Defendants now claim were error. Those rulings include Judge McMahon's decisions to exclude questions to prospective jurors about their specific beliefs on abortion, sustaining the State's objections to questions on cross-examination, which will be discussed more fully below, and prohibiting Defendants from introducing their proposed affirmative defenses of coercion and defense of others.

Postconviction motions for relief from the verdict were made and Judge McMahon denied these motions, entered judgment, and sentenced the Defendants to a variety of penalties. At the sentencing hearing, Judge McMahon placed defendant Carol Robbins on probation of eighteen months with certain conditions. After the penalty was pronounced, Ms. Robbins stated she "would not accept probation," and would rather "spend time in jail." Judge McMahon did not honor her request and imposed probation. Ms. Robbins contends on appeal that Judge McMahon erred by not complying with her request to be sentenced to jail rather than placed on probation.

Defendants appealed Judge McMahon's various rulings to the court of appeals. The case was consolidated

with *Migliorino* and certified by the court of appeals to this court. We accepted the certification.

## I. *APPLICABILITY OF THE STATUTE*

Initially, Migliorino, Miller, and Defendants in the *Haines* case contend sec. 943.145, Stats., does not apply to the facilities in which they were arrested. Migliorino and Miller argue that the "rules promulgated by the medical examining board" only regulate physicians, not clinics or offices. Judge Doherty ruled the statute was applicable as did Judge McMahon when she denied Defendants' motion challenging the jury instruction regarding the definition of a medical facility. We agree with the circuit courts.

The application of a statute to a set of facts is a question of law which this court reviews without deference to the circuit court's determination. *Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989). Section 943.145(1), Stats., defines the term "medical facility" for the statute. The statute is applicable to all medical facilities, whether publicly or privately owned. The issue in question here is whether the Affiliated Medical Services Clinic "is subject to the rules promulgated by the medical examining board for the clinic or office that are in effect on November 20, 1985" as required in the statute.

The Medical Examining Board regulates the performance of abortions in ch. 11 of its rules. Wisconsin Administrative Code, sec. Med. 11 (1984). Section 11.04 of the rules, which was in effect on November 20, 1985, provides in part:

**Med. 11.04 First 12 weeks of gestation. (1)** If an abortion is to be performed by a physician during the first 12 weeks of gestation in a facility other than

a hospital approved under s. 140.26, Stats., in which general surgical procedures are customarily performed, the physician shall: . . .

(b)   Provide a receiving facility where the patient may be prepared and may receive necessary preoperative medication and observation . . .

(e)   Provide a physical place where the abortion procedure is carried out, and use techniques and procedures which assure proper sterility, asepsis, and antisepsis.

(f)   Provide for appropriate equipment and appropriately trained personnel for operative procedures, anesthesia, and resuscitation.

(g)   Have arrangements with a hospital approved under s. 140.26, Stats., for admission of patients needing hospital care. Such hospital shall be located sufficiently near the facility used so that the patient could be transferred to and arrive at the hospital within 30 minutes of the time when hospitalization appears necessary.

(h)   Provide a recovery facility where the patient can be observed until she has sufficiently recovered from the procedure and the anesthesia and can be safely discharged by the physician.

(i)   Provide for postoperative instructions and arrangements for follow-up.

(j)   Maintain at the facility adequate permanent records relating to all such patients covering the above matters.

The complaint alleged the clinic was subject to the rules and Migliorino and Miller do not contend that abortions are not performed there. Rather they argue the rules only regulate physicians, not facilities. A physician, however, can only perform first trimester abortions in a

facility where the requirements of section 11.04(b), (e), (g), (h) and (i), can be fulfilled. Hence, we conclude it regulates the facility where abortions are performed and therefore the statute is applicable.

In *Haines,* Defendants also claim the Bread and Roses Women's Health Center was not subject to the statute and that the State failed to prove so at trial. The associate director of the clinic testified the clinic was a medical facility providing health services to women. Defendants concede there is no dispute that abortions are one of these health care services. As stated above, the medical examining rules apply to a facility where such procedures are performed and therefore the State has presented evidence which shows the facility is subject to the statute.

The Defendants in *Haines* also contend the statute only applies to clinics or offices which were in business on November 20, 1985, and subject to the Medical Examining Board's rules at that time. A plain reading of the statute indicates that the phrase "are in effect on November 20, 1985," modifies the phrase "the rules promulgated by the medical examining board" and not "the clinic or office." (The plural "are" is correct only with the noun "rules" and not the phrase "clinic or office.") Hence, this argument is unpersuasive. In conclusion, we hold sec. 943.145, Stats., is applicable to the facilities in question here.

## II. *CONSTITUTIONALITY OF THE STATUTE*

The constitutionality of a statute is a question of law which this court reviews without deference to the circuit court's reasoning. *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 559, 426 N.W.2d 33 (1988). "It is well

settled that the law in this state presumes all legislative acts are constitutional, and the [challenger] in order to prevail must prove the opposite by a standard beyond a reasonable doubt." *Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 577, 364 N.W.2d 149 (1985). Penal statutes are to be strictly construed. *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 676, 239 N.W.2d 313 (1976). Nevertheless, "given a choice of possible interpretations, this court must select the construction that results in constitutionality rather than invalidity." *Id.* 71 Wis. 2d at 689.

The constitutionality of sec. 943.145, Stats., is challenged on two grounds. First, Migliorino, Miller and Defendants contend the statute unconstitutionally restricts their rights of free speech. Second, in *Migliorino,* Judge Doherty held the statute unconstitutional because he concluded subsection three entitles labor advocates first amendment protection where advocates of other causes are not provided the same right.

## A. *FREE SPEECH CHALLENGE.*

Migliorino, Miller and Defendants all argue that sec. 943.145, Stats., restricts their right to express their views on abortion. They maintain the purpose of the statute is to prevent abortion protesters from advocating their position. We disagree.

Section 943.145(2), Stats., provides:

**943.145 Criminal trespass to a medical facility**
**. . ..** **(2)** Whoever intentionally enters a medical facility without the consent of some person lawfully upon the premises, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class B misdemeanor.

The statute does not regulate what a person may say or express; it is content neutral. Rather it regulates conduct which is prohibited in medical facilities, regardless of the message, if any, the offender is expressing. The statute prohibits entry into a medical facility, without consent, "under circumstances tending to create or provoke a breach of the peace." Section 943.145, Stats., does not limit its coverage to specific communications or communicative purposes. This statute could regulate the conduct of one who comes uninvited into an abortion clinic without any feelings, pro or con about abortion, but who merely resents the location of a medical facility of any kind in the neighborhood. His intention might only be to disrupt operations in the hope that the facility might move. Or one may have a personal dislike for a member or members of the staff of a medical facility and hope to interfere with the facility's function; the sole purpose to cause that member or members embarrassment.

We recognize that conduct such as that displayed by the various defendants here may be "expressive conduct" and as such would be legally regarded as "speech" and protected by the first amendment. *See Texas v. Johnson,* 1989 U.S. LEXIS 3115, 12. "Even protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense & Ed. Fund,* 473 U.S. 788, 799 (1985). Assuming there is "protected speech" under the first amendment here, this court "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Id.* 473 U.S. at 797. The United States Supreme Court has identified three types of fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Id.* 473 U.S. at 802.

We conclude a "medical facility" as defined in sec. 943.145, Stats., is a nonpublic forum. These facilities are not "traditional public forums" such as streets and parks. *Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 45 (1983). Nor have they been "opened for use by the public as a place for expressive activity" which would make them a "public forum by government designation." *Id.* The medical facilities as defined in the statute are undoubtedly nonpublic forums.

Justice Steinmetz in his dissent finds it significant that public medical facilities may be included in the statute's scope of coverage. "The First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Cornelius,* 473 U.S. at 803 *quoting United States Postal Service v. Council of Greenburgh Civic Assn.,* 453 U.S. 114, 129 (1981). The state, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* 473 U.S. at 800 *quoting Greer v. Spock,* 424 U.S. 828, 836 (1976). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Id.* 473 U.S. at 799–800. The United States Supreme Court has held that various types of property may constitute a nonpublic forum despite government ownership. *See Id.* 473 U.S. at 803-04. Consequently, public property may still be a nonpublic forum.

"Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id.* 473 U.S. at 806. The reasonableness of the restriction

527

"must be assessed in the light of the purpose of the forum and all the surrounding circumstances." *Id.* 473 U.S. at 809. We further note that "the First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." *Id.* 473 U.S. at 809.

Section 943.145, Stats., is content neutral. We also conclude that it is a reasonable regulation when assessed in the light of the purpose of medical facilities and the circumstances surrounding them. Any medical consultation, treatment or procedure usually is a very personal, very private activity. It often creates a great deal of apprehension and tension even under the most optimum circumstances. Except in emergencies such activities are usually conducted away from the gaze or the comments of outsiders. No patient should be subjected to conduct "tending to create or provoke a breach of the peace" in such circumstances. This statute very properly prohibits such conduct. It is a reasonable regulation in furtherance of significant state interests such as privacy, health, property, and security. The legislature may constitutionally protect these interests and this statute does so.

Defendants also contend that the statute is unconstitutional because "the hecklers' reaction is a predicate for depriving [a] viewpoint of First Amendment protection." Expression such as that displayed by the various defendants in these cases may be constitutionally regulated. The United States Supreme Court has stated that:

> Although the avoidance of controversy is not a valid ground for restricting speech in a public forum, a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas. The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a non-

> public forum and hinder its effectiveness for its
> intended purpose.

*Id.* 473 U.S. at 811. We therefore find this "hecklers"
argument unpersuasive.

Justice Ceci in his dissent concludes sec. 943.145,
Stats., is unconstitutionally vague. This argument was
not briefed or asserted in this court by any of the parties
on this appeal.

> The test to determine vagueness is whether the stat-
> ute or ordinance is so obscure that men of ordinary
> intelligence must necessarily guess as to its meaning
> and differ as to its applicability . . . [it] must be
> sufficiently definite so that potential offenders who
> wish to abide by the law are able to discern when the
> region of proscribed conduct is neared and those who
> are charged either with enforcing or applying it are
> not relegated to creating their own standards of cul-
> pability instead of applying the standards prescribed
> in the law.

*City of Milwaukee v. Nelson,* 149 Wis. 2d 434, 446–47,
439 N.W.2d 562 (1989), *quoting Milwaukee v. Wilson,*
96 Wis. 2d 11, 16, 291 N.W.2d 452 (1980) (footnotes
omitted).

■

Justice Ceci finds the phrase "under circumstances
tending to create or provoke a breach of the peace"
insufficiently definite. "Impossible standards" of clarity,
however, are not required. *Id.* 149 Wis. 2d at 448, *citing
Kolender v. Lawson,* 461 U.S. 352, 361 (1983). Nor must
statutes be "drafted with mathematical exactitude." *Mil-
waukee v. K.F.,* 145 Wis. 2d 24, 33, 426 N.W.2d 329
(1988). Rather, "a fair degree of definiteness is all that is
required to uphold a statute or regulation, and a statute
or regulation will not be voided merely by showing that

the boundaries of the area of proscribed conduct are somewhat hazy." *Id. quoting State ex rel. Hennekens v. City of River Falls Police & Fire Commission,* 124 Wis. 2d 413, 420, 369 N.W.2d 670 *reconsideration denied* 126 Wis. 2d 39, 373 N.W.2d 672 (1985). We conclude the phrase provides a fair degree of definiteness, and that is all that is needed.

This court in *City of Oak Creek v. King,* 148 Wis. 2d 532, 548, 436 N.W.2d 285 (1989), held that the disorderly conduct statute was not unconstitutionally void for vagueness as applied in the case. This court concluded that conduct which was not violent, abusive, indecent, profane, boisterous or unreasonably loud, but had a "tendency to disrupt good order and to provoke a disturbance" constituted an offense. *Id.* Because the above language and that of sec. 943.145, Stats., is substantially similar, we conclude that as applied to a medical facility, which is a nonpublic forum, the language of sec. 943.145 is not impermissibly vague.

The position taken by Justice Ceci's dissent does not persuade us the statute is unconstitutionally vague.

Finally, we conclude that sec. 943.145, Stats., does not infringe upon the free-speech protection provided by art. I, sec. 3 of the Wisconsin Constitution. In the case before us, the Wisconsin Constitution affords no greater protection to the various defendants in these facilities than that provided by the first amendment of the United States Constitution. *Cf. Jacobs v. Major,* 139 Wis. 2d 493, 407 N.W.2d 832 (1987) (Wisconsin Constitution does not provide greater protection for those who seek to protest on private property than that provided by the first amendment); *State v. Horn,* 139 Wis. 2d 473, 407 N.W.2d 854 (1987) (free-speech protections of the Wisconsin Constitution do not extend to protect speech activities on the grounds of a private medical clinic).

## B. *LABOR EXCEPTION OF SEC. 943.145(3), STATS.*

Judge Doherty held, and Migliorino, Miller, and Defendants argue, that sec. 943.145(3), Stats., unconstitutionally provides labor with free speech protection while denying all other advocates the same protection. We disagree.

Section 943.145(3), Stats., provides:

**943.145 Criminal trespass to a medical facility**
**. . .. (3)** This section does not prohibit any person from participating in lawful conduct in labor disputes under s. 103.53.

Section 103.53, Stats., defines what constitutes lawful conduct in labor disputes. It provides:

**103.53 Lawful conduct in labor disputes.**
**(1)** The following acts, whether performed singly or in concert, shall be legal:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment regardless of any promise, undertaking, contract or agreement in violation of the public policy declared in s. 103.52;

(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in s. 103.52;

(c) Paying or giving to, any person any strike or unemployment benefits or insurance or other moneys or things of value;

(d) By all lawful means aiding any person who is being proceeded against in, or is prosecuting any action or suit in any court of the United States or of any state;

531

(e)  Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof;

(f)  Ceasing to patronize or to employ any person or persons, but nothing herein shall be construed to legalize a secondary boycott;

(g)  Assembling peaceably to do or to organize to do any of the acts heretofore specified or to promote lawful interests;

(h)  Advising or notifying any person or persons of an intention to do any of the acts heretofore specified;

(i)  Agreeing with other persons to do or not to do any of the acts heretofore specified;

(j)  Advising, urging, or inducing without fraud, violence, or threat thereof, others to do the acts heretofore specified, regardless of any such undertaking or promise as is described in s. 103.52; and

(k)  Doing in concert any or all of the acts heretofore specified shall not constitute an unlawful combination or conspiracy.

(l)  Peaceful picketing or patrolling, whether engaged in singly or in numbers, shall be legal.

(2)  No court, nor any judge or judges thereof, shall have jurisdiction to issue any restraining order or temporary or permanent injunction which, in specific or general terms, prohibits any person or persons from doing, whether singly or in concert, any of the foregoing acts.

Section 943.145(3), Stats., only reaffirms the right to perform "lawful" conduct under sec. 103.53. This court finds no conduct which would be lawful under sec. 103.53 and unlawful under sec. 943.145.

Sections 103.53(1)(i) and (k), Stats., permit more than one person to engage in activities protected by the rest of the statute. Section 103.53(1)(l) allows only peaceful picketing or patrolling. One may urge, advise, or induce another to perform acts which are lawful under the statute only if there is no fraud, violence, or threat thereof. Section 103.53(1)(j).

In addition, sec. 103.53(1)(e), Stats., limits the permissibility of communicating information only if it is "without intimidation or coercion" or "fraud, violence, breach of the peace, or threat thereof." It also limits the communication to "any public street or any place where any person or persons may lawfully be." Under this section, labor advocates have no more right to enter a medical facility and express their views than advocates of other causes. Rights granted to labor advocates pursuant to sec. 103.53 do not supersede those interests protected by sec. 943.145. These sec. 103.53 "labor rights" are concurrent with the rights available to other advocates who are still subject to sec. 943.145.

Judge Doherty contended the only purpose for sec. 943.145(3), Stats., was to grant additional rights to labor. He stated:

> The only logical inference that I perceive that would give a legislative purpose to Section 943.145, W. S. is to protect labor's right to exercise its Section 103.53, W. S. rights on the premises of a "medical facility." Why else include this exception in the context of a "trespass statute?" I find no other reason.

We note that sec. 947.013, Stats., also contains a subsection with the same language as that in sec. 943.145(3). Section 947.013 defines the crime of harassment and prohibits conduct such as striking, shoving, kicking or other physical contact and acts which harass or intimidate a person. Section 947.013(2) also notes that lawful conduct pursuant to sec. 103.53 is not prohibited. This court also fails to find any acts permitted under sec. 103.53 which would not be allowed by sec. 947.013.

We conclude the purpose of sec. 943.145(3), Stats., is to acknowledge the existence of a separate statute which applies to labor disputes and to clarify that the "criminal trespass to a medical facility" statute does not regulate already lawful labor activity. The legislature only reaffirmed the specialized and unique nature of labor matters and the existence and applicability of labor-related statutes regarding those matters.

Judge Doherty cited two cases, *Carey v. Brown* and *Chicago Police Dept. v. Mosley,* for support of his position that sec. 943.145(3), Stats., rendered the statute unconstitutional. We find a crucial distinction in them which makes them inapplicable to the statute here. In both cases, the legislation in question (an ordinance in *Mosley* and a statute in *Carey*) prohibited public picketing except in instances involving a labor dispute. *See Carey,* 447 U.S. at 457; *Mosley,* 408 U.S. at 92–93 (for text of the legislative acts contested). Here the statute does not regulate picketing, an established form of "free speech," nor does it allow labor advocates greater rights than other advocates. Section 943.145 does not prohibit acts based on the content of the message. Consequently, their holdings are not applicable to sec. 943.145.

Because Judge Doherty incorrectly determined that sec. 943.145, Stats., was unconstitutional and thus erro-

534

neously dismissed the criminal complaint against Migliorino and Miller, we reverse the order dismissing such complaint. The case is remanded for further proceedings.

## III. *CONSENT ISSUE*

Defendants in *Haines* challenge their convictions on four other grounds; the first of which challenges Judge McMahon's ruling and jury instruction that they could be convicted if the jury found they had entered the clinic for a purpose inconsistent with the purpose for which the clinic was open to the public. Defendant's had moved for a directed verdict because they contended the State had failed to show they lacked consent to enter the facility. Judge McMahon denied the motion and refused to read an alternate jury instruction based on Defendants' theory. Rather, she instructed the jury on consent as follows:

> The general consent given to the public to enter a business premise is not for all things and all purposes, but is impliedly conditioned by the purpose of doing business in the area set aside for that purpose.

We conclude Judge McMahon did not err in either respect. Section 939.22(48), Stats., defines "without consent" as "no consent in fact." Here, evidence was introduced which showed that Defendants had not been given consent to enter the facility. Thus they lacked "consent in fact" to enter the facility.

Further, Judge McMahon's decision and instruction were based on *Levesque v. State,* 63 Wis. 2d 412, 217 N.W.2d 317 (1974). In *Levesque,* this court held that "consent," as required in sec. 943.10, Stats. 1973–74

535

(burglary),[3] was "impliedly conditioned by time, place and purpose" to which the building was open. *Id.* 63 Wis. 2d at 415. This court further stated that "the consent given to the public to enter is not for all things and all purposes. A hawker of baubles is a member of the public who does not have the consent of a jeweler to enter his store to sell baubles in the aisles." *Id.* 63 Wis. 2d at 416. We conclude the statute in *Levesque* and sec. 943.145 are substantially similar and that this definition of "consent" is applicable to sec. 943.145.

Defendants rely on *Bouie v. City of Columbia,* 378 U.S. 347 (1964), for their contention that the ruling and

---

[3]Section 943.10, Stats. provides:

**943.10 Burglary. (1)** Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:

(a)  Any building or dwelling; or

(b)  An enclosed railroad car; or

(c)  An enclosed portion of any ship or vessel; or

(d)  A locked enclosed cargo portion of a truck or trailer; or

(e)  A room within any of the above.

**(2)**  Whoever violates sub. (1) under any of the following circumstances may be imprisoned not more than 20 years:

(a)  While armed with a dangerous weapon; or

(b)  While unarmed, but arms himself with a dangerous weapon while still in the burglarized enclosure; or

(c)  While in the burglarized enclosure opens, or attempts to open, any depository by use of an explosive; or

(d)  While in the burglarized enclosure commits a battery upon a person lawfully therein.

**(3)**  For the purpose of this section, entry into a place during the time when it is open to the general public is with consent.

536

instruction were erroneous. This reliance, however, is misplaced. The defendants in *Bouie* entered the establishment for the purpose for which the business was open to the public. Here, however, Defendants did not so enter; their purpose was quite the opposite.

## IV. *VOIR DIRE*

Defendants also contend that Judge McMahon erred by denying them the opportunity to ask certain in depth questions about prospective jurors' views on abortion on *voir dire*. A circuit court has broad discretion regarding the questions permitted on *voir dire*. *Hammill v. State*, 89 Wis. 2d 404, 408, 278 N.W.2d 821 (1979). A circuit court's decision, however, is subject to "the essential demands of fairness." *Id.* An exercise of such discretion will not be disturbed unless the circuit court abuses its discretion or violates some rule of law. *Id.*

Defendants maintain their inability to ask questions of prospective jurors specifically regarding the basis and depth of their personal views on abortion inevitably eliminated the possibility of selecting an impartial jury. General questions about abortion, however, were asked, including whether there was anything about the subject which would prevent the jury from being fair and impartial. That was all that was needed. Defendants have failed to show that Judge McMahon abused her discretion.

## V. *CROSS-EXAMINATION*

Defendants also contend that Judge McMahon erred by not permitting them to ask certain questions of two of the State's witnesses on cross-examination. The

first of these witnesses was a physician who was at the clinic on the day of the incident. He testified that the clinic was a medical facility. Defendants attempted to ask this witness questions such as what percentage of his practice involves performing abortions and how many years he had performed them. Defendants also claim that they were denied the opportunity to question the physician about the average number of abortions he performed at this clinic, the percentage in profits received from such activity, the fees he received for performing the procedure, whether he conformed with the informed consent requirements, and the theoretical debate in the medical field as to whether abortions constitute the "practice of medicine." Judge McMahon sustained the State's objections to the relevancy of these questions.

"A circuit court's ruling on relevance will be reversed only for an abuse of discretion." *State v. Robinson,* 146 Wis. 2d 315, 330, 431 N.W.2d 165 (1988). "This court will not find an abuse of discretion if there is a reasonable basis for the [circuit] court's determination." *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). Whether this court would have permitted the evidence to be introduced is not the question, rather the question is whether the circuit court exercised its discretion in accordance with accepted legal standards and the facts of record. *Id.*

Section 904.01, Stats., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defendants have failed to show how evidence regarding the number of abortions the physician performed would have been relevant to the issues presented in the trial. Defendants claim that the

witness may have been biased, but they do not say how this bias would affect his testimony, which basically concerned the physical characteristics of the clinic. Consequently, we hold that Judge McMahon did not abuse her discretion.

The second of these State witnesses was the associate director of the clinic. She testified as to the nature of the clinic, the physical layout of the clinic, and the events of the incident in question. Defendants maintain Judge McMahon erred by sustaining the State's objections, on relevancy grounds, to questions about whether she thought there was anything wrong in what she did at the clinic, her personal beliefs on abortion, whether the clinic was a "lucrative facility" and prior demonstrations at the clinic. We conclude on the basis of the record before us that Judge McMahon did not abuse her discretion by excluding those questions.

## VI. *AFFIRMATIVE DEFENSES*

At trial, Defendants proffered in defense of their conduct the following positions: (1) their conduct was necessary and reasonable to protect third persons from real or apparent unlawful interference by others, (2) they reasonably believed that their actions were the only means of preventing imminent death or great bodily harm to others, and (3) their conduct was subject to the defenses recognized in secs. 939.48(4) (defense of others) and 939.46(1) (coercion), Stats. Judge McMahon denied Defendant's submission of these defenses.

The court of appeals has held that a coercion defense was not available to offenders of the criminal trespass statute in a situation such as the one here. *State*

*v. Horn*, 126 Wis. 2d 447, 454–56, 377 N.W.2d 176 (Ct. App. 1985), *aff'd on other grounds* 139 Wis. 2d 473, 455–56, 407 N.W.2d 854 (1987). It stated:

> The United States Supreme Court has held that a woman's right to choose abortion is constitutionally protected. *Roe v. Wade*, 410 U.S. 113 (1973). Consequently, the abortion services provided by the clinic are legal. In light of *Roe*, it is not appropriate for this court to determine the legal status of abortion. We therefore hold that it is unreasonable to believe that one must commit an act of criminal trespass in order to prevent an activity that is legal and constitutionally protected. If appellants wish to attempt to change the legal status of abortion, they must do so within channels provided by our democratic form of government. A contrary holding would allow an individual to violate the law without sanction whenever he felt the government had not made the proper choice between conflicting values.

We conclude the reasoning provided by the court of appeals in *Horn* is applicable to the statute and defenses presented in this case. Hence, we hold Judge McMahon did not err by excluding such defenses.

## VII. *REFUSAL OF PROBATION*

Finally, one of the defendants, Ms. Carol Robbins, challenges Judge McMahon's refusal to honor her request for a sentence of incarceration and not probation. Ms. Robbins was placed on eighteen months probation, conditioned upon her not violating any criminal law and not having any contact within 500 feet of the facility. Ms. Robbins told Judge McMahon she would rather be sentenced instead of being placed on probation. Judge McMahon refused and Ms. Robbins now appeals.

Ms. Robbins relies on *Garski v. State,* 75 Wis. 2d 62, 77, 248 N.W.2d 425 (1977), and *State v. Smith,* 100 Wis. 2d 317, 302 N.W.2d 54 (Ct. App. 1981), *overruled on other grounds, State v. Firkus,* 119 Wis. 2d 154, 350 N.W.2d 82 (1984), for the proposition that she has the right to reject probation if she believes it is more onerous than a possible sentence.

In *Garski,* this court stated: "If the defendant finds the conditions of probation more onerous than the sentence which would have been imposed he can refuse the probation." *Garski,* 75 Wis. 2d at 77. This statement was based upon this court's interpretation of the probation statute, sec. 973.09, Stats. (1977), at the time of *Garski.* The current version of sec. 973.09 is substantially similar to the 1977 statute in respect to when probation may be imposed and we feel bound by our prior interpretation of this statute in the absence of very compelling reasons to overrule our prior interpretation.

Presumably the legislature was aware of this court's holding in *Garski* that a defendant may refuse probation. Since *Garski,* the legislature has amended sec. 973.09, Stats., in 1979, 1981, 1983, 1985 and 1987. In none of these amendments has it changed the effect of this court's ruling that a defendant need not accept probation in lieu of sentencing.

Section 973.09(7m)(a), Stats., permits a defendant to refuse the imposition of community service as a condition of probation. Nowhere else, however, has the legislature stated that probation or any other condition of probation which may be imposed may be refused by a defendant. Thus it is clear that the legislature has not seen fit to change the statute to overcome the effects of the *Garski* decision.

We recognize that our interpretation can prevent a circuit court from imposing probation which, in a given

case, may be more desirable both for society and an individual defendant than the imposition of a sentence; in this case up to ninety days in jail or a fine not to exceed $1,000 or both as provided by the statute. The legislature might consider that rejection of probation in some circumstances may result in jail overcrowding; however in view of our prior holding, the matter of a defendant's option to reject probation is a question better left to the legislature. We respectfully suggest that the legislature give consideration to amending the probation statute to eliminate optional rejection of probation by a convictee. Consequently, we conclude that Judge McMahon erred by failing to honor Ms. Robbins' refusal of probation and we remand the matter for resentencing.

*By the Court.*—The order of the circuit court for Milwaukee county, Honorable Thomas Doherty, judge, dismissing the criminal complaint against Monica Migliorino and Edmund Miller is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

The judgments of conviction by the circuit court for Milwaukee county, Honorable Patricia McMahon, judge, are affirmed. The order of probation issued in the case of *State v. Haines, et al.,* for Carol Robbins is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.

STEINMETZ, J. (dissenting). I dissent to the majority opinion. When compared to constitutional principles, I believe the majority has overreached in interpreting the statute as did the legislature in adopting it.

I do not comment extensively on the behavior of the defendants while on the premises of Affiliated Medical Services. However, I do believe the behavior complained

542

against could have been charged criminally under sec. 947.01, Stats., disorderly conduct, which tends to confirm that the state need not punish these defendants under sec. 943.145 in order to keep the peace. *Texas v. Johnson,* 1989 U.S. LEXIS 3115, 22 (filed June 21, 1989). In *City of Oak Creek v. King,* 148 Wis. 2d 532, 545, 436 N.W.2d 285 (1989), this court stated:

> It is not necessary that an actual disturbance must have resulted from the appellant's conduct. The law only requires that the conduct be of a type which tends to cause or provoke a disturbance, under the circumstances as they then existed.

If the defendants' conduct constituted "substantial intrusions which offend the normal sensibilities of average persons" or "significantly abusive or disturbing demeanor in the eyes of reasonable persons," then they are chargeable under sec. 947.01, Stats. *State v. Givens,* 28 Wis. 2d 109, 122, 135 N.W.2d 780 (1965). It must be emphasized that in both *King* and *Givens* the defendants' conduct triggered their arrest and eventual conviction. In *King,* the defendant entered a restricted area after an airplane crash and refused to leave when advised to do so by the police. *King,* 148 Wis. 2d at 537–38. In *Givens* the defendants "conducted a sit-in demonstration on the floor of the waiting room and of the corridor leading to the office of the Milwaukee county board of supervisors . . .." *Givens,* 28 Wis. 2d at 111–12.

Section 943.145, Stats., makes a person chargeable with a violation not for any behavior or actions of the defendant but for mere entry of the person on a premise, public or private, if the circumstances provoke a breach of the peace. In other words, if a person's entry, expression or even appearance upsets someone who then causes a disturbance, the gravamen or fault rests with the per-

son exercising the constitutional right of freedom of expression and right to move about unfettered in public facilities. Mere entry or expression is a criminal violation. This broad restriction applies not only to these defendants but to anyone who espouses a philosophy contrary to the persons on the premises and is upset by that individual's expression or appearance.

Section 943.145, Stats., treats as criminal behavior the mere entry of a public or private "medical facility" that causes a response or reaction by someone else that breaches the peace. As recently stated by the United States Supreme Court: "[i]t would be odd indeed to conclude . . . that the Government may ban the expression of certain disagreeable ideas on the unsupported presumption that their very disagreeableness will provoke violence." *Johnson,* 1989 U.S. LEXIS at 20.

*Jacobs v. Major,* 139 Wis. 2d 492, 524, 407 N.W.2d 832 (1987) dealt with a privately-owned facility. As the dissent in *Jacobs* noted, additional rights are guaranteed in public places. *Id.* at 532 (Abrahamson, J., concurring in part and dissenting in part). This statute overbroadly applies to both public and private medical facilities.

I believe sec. 943.145, Stats., is constitutionally defective in that it impermissibly invades a person's right to free speech. First, "medical facility" is defined in sec. 50.33(2) which includes public and private medical facilities. Hospitals as well as clinics are the beneficiaries of this criminal statute, with no distinction between public and private facilities. Thus, the entry into either a public or private medical facility, state owned or privately owned, is prohibited if such entry is "without the consent of some person lawfully on the premises" and this alone could trigger the offense. Consent, by the wording of the statute, can be given by anyone lawfully on the premises. That could include any doctor,

544

employee, patient or member of the public lawfully there and, therefore, lacks certainty. Such entry into a public facility should not be prohibited even if done for purposes of expressing a thought or by mere presence.

Section 943.14, Stats., is the only other criminal statute which makes mere entry a violation if it tends to create or provoke a breach of the peace. However, sec. 943.14 concerns the entry into a dwelling not entry into a public facility. Consent is always necessary when entering a dwelling; this requirement is not needed when entering a public facility.

I believe that a law aimed at and which threatens one group's constitutional right to free speech threatens the rights of all Americans. I find sec. 943.145, Stats., too broad and in violation of constitutional rights and therefore dissent from the majority opinion.

LOUIS J. CECI, J. (dissenting). I dissent because I believe that sec. 943.145(2), Stats., is unconstitutionally vague on its face. The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that people of common intelligence must necessarily guess as to its meaning and differ as to its applicability, it is unconstitutional. *City of Oak Creek v. Ah King,* 148 Wis. 2d 532, 546, 436 N.W.2d 285 (1989), citing *State v. McCoy,* 143 Wis. 2d 274, 285-86, 421 N.W.2d 107 (1988); *Bachowski v. Salamone,* 139 Wis. 2d 397, 406, 407 N.W.2d 533 (1987).

'A statute or ordinance is unconstitutionally vague if it fails to afford proper notice of the conduct it seeks to proscribe or if it encourages arbitrary and erratic arrests and convictions. The test to determine vagueness is whether the statute or ordinance is so obscure that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its applicability . . . [it] must be sufficiently definite so that potential offenders who wish to abide by the law are able to discern when the region of proscribed conduct is neared and those who are charged either with enforcing or applying it are not relegated to creating their own standards of culpability instead of applying the standards prescribed in the law.'

*City of Milwaukee v. Nelson,* 149 Wis. 2d 434, 446–47, 439 N.W.2d 562 (1989), quoting *Milwaukee v. Wilson,* 96 Wis. 2d 11, 16, 291 N.W.2d 452 (1980) (footnotes omitted).

Section 943.145(2), Stats., provides:

Whoever intentionally enters a medical facility without the consent of some person lawfully upon the premises, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class B misdemeanor.

I believe that the phrase "under circumstances tending to create or provoke a breach of the peace" is not sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. I believe sec. 943.145(2) is so obscure that people of common intelligence must necessarily guess as to its meaning and differ as to its applicability.

For example, sec. 943.145(2) could apply to an individual who enters a medical facility without consent wearing a shirt which graphically depicts what that per-

son believes happens during an abortion procedure if under the circumstances such conduct tended "to create or provoke a breach of the peace." Similarly, sec. 943.145(2) could apply to an individual who enters a medical facility without consent wearing a shirt which extols the virtues of a particular athletic team if under the circumstances such conduct tended "to create or provoke a breach of the peace." I believe that the foregoing demonstrates that sec. 943.145(2) simply does not give reasonable notice of the type of conduct prohibited by the statute to those who wish to avoid the penalty for violation of the statute.

I note that the fact that a statute fails to itemize with particularity every possible kind of conduct which would violate such statute does not make it unconstitutionally vague. *Ah King,* 148 Wis. 2d at 546. For example, in *State v. Givens,* 28 Wis. 2d 109, 115, 135 N.W.2d 780 (1965), this court, in finding that the disorderly conduct statute, sec. 947.01, Stats.,[1] is reasonably explicit, held that:

> [T]he six types of affirmative conduct which are expressly listed in the statute all tend to disrupt good order and to provoke a disturbance. When the statute, after the specific enumerations, in a 'catch-all' clause proscribes 'otherwise disorderly conduct' which tends to 'provoke a disturbance,' this must mean conduct of a type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance. Such inter-

---

[1]Section 947.01, Stats., provides as follows:

**947.01 Disorderly conduct.** Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

pretation rests upon the rule of *ejusdem generis. . . .* Upon this approach, the instant statute sufficiently identifies the type of behavior which the legislature intended to be contrary to law.

(Citations omitted.)

In contrast, sec. 943.145(2), Stats., does not provide any examples of the type of conduct which tends "to create or provoke a breach of the peace." As a result, people of common intelligence must necessarily guess as to its meaning and differ as to its applicability. Therefore, I would hold that sec. 943.145(2) is unconstitutionally vague on its face.