STATE of Wisconsin, Plaintiff-Respondent,

v.

Harold C. POTE, III, Defendant-Appellant.

Court of Appeals

*No. 02–0670–CR. Submitted on briefs September 10, 2002.—
Decided January 30, 2003.*

2003 WI App 31

(Also reported in 659 N.W.2d 82.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John A. Pray* of *Legal Assistance Program, U.W. Law School*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Dykman, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Harold Pote appeals a judgment sentencing him to prison for failure to pay child support. The circuit court imposed the sentence after it determined that Pote had rejected the probation the court originally ordered. Pote also appeals an order denying postconviction relief from the appealed judgment and an order denying relief under WIS. STAT.

§ 974.06 (1999–2000)[1] from the earlier judgment convicting him of the offense. With respect to the conviction itself, Pote claims his trial counsel was ineffective for failing to investigate a possible defense to the charge and for failing to properly advise him regarding his no-contest plea. As to the judgment sentencing him to prison for two years, Pote claims that (1) the trial court erred in concluding that he had rejected probation; (2) his trial counsel was ineffective for failing to make a sentencing argument; and (3) the trial court erroneously exercised its discretion in imposing the maximum sentence.

¶ 2. We conclude that Pote's trial counsel was not ineffective in his representation prior to the entry of Pote's plea to the offense. Accordingly, we affirm the order denying Pote relief from the conviction under WIS. STAT. § 974.06. We also conclude that the trial court did not err in determining that Pote had rejected the probation originally imposed. We conclude, however, that Pote's counsel was ineffective for failing to make a sentencing argument, or in the alternative, for failing to request that he be permitted to withdraw. Because we reverse the appealed judgment and remand for a new sentencing hearing, we do not address whether the court erroneously exercised its discretion in imposing the maximum term of confinement and extended supervision.

## BACKGROUND

¶ 3. The State charged Pote under WIS. STAT. § 948.22(2) (1997–1998) with intentionally failing to pay court-ordered child support for two periods of 120

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. .

days or more. The first felony charge covered the period May 4 through December 31, 1999, and carried a maximum potential indeterminate sentence of two years imprisonment. *See* WIS. STAT. § 939.50(3)(e) (1997–1998). The second count charged that Pote intentionally failed to pay support for the period January 1 through September 26, 2000, and this offense carried a maximum five-year sentence, bifurcated into a term of up to two years of confinement and up to three years of supervised release. *See id.*; WIS. STAT. § 973.01(1) and (2)(b)5 (1997–1998).

¶ 4. Pote and the State entered into a plea agreement whereby Pote pleaded no contest to the second count, the first count was dismissed, and the parties jointly recommended probation with conditions *not* including jail time. The court accepted Pote's plea and imposed a four-year term of probation in accordance with the parties' agreement. At the time of the plea and sentencing, Pote was serving a 180–day jail commitment as a civil contempt sanction for his failure to pay child support as ordered in the relevant paternity judgment.

¶ 5. The parties returned to court two months later at the request of Pote's probation officer, who requested the court to conduct a "status review" of Pote's probation. The probation officer reported to the court the following:

> Mr. Pote has refused to cooperate with the department regarding intake proceedings and has refused to sign any departmental documentation [i.e., probation rules]. Mr. Pote is adamant that he "did not" agree to a plea bargain for probation and has stated he "will not" do anything until a DNA test is performed to prove he "is not" the father of the child.

The agent stated in her letter to the court that she did

not believe the Department of Corrections could revoke Pote's probation for his refusal to sign the probation rules. She requested, however, that the court review the circumstances and recommended "that the probation order be vacated and a jail sentence . . . be granted."

¶ 6. At the review hearing, the State asked the court to vacate Pote's conviction and the order for probation, declare his plea withdrawn, reinstate the dismissed count and set both counts for trial. The following then transpired:

THE COURT: Then, [defense counsel] is he rejecting probation?

[DEFENSE COUNSEL]: No.

THE COURT: Then have him sign the rules right now.

[DEFENSE COUNSEL]: What he has indicated is that he had been asking for a DNA test . . . . [Explains that mother of the child would cooperate and Red Cross would do testing if court so ordered.]

THE COURT: ...[T]his court is not about to order that. I have nothing before me in which to do so.

[DEFENSE COUNSEL]: Well, Mr. Pote's position is that he would gladly sign the orders if he has a DNA test result showing that he is the father.

THE COURT: There's no bargaining. He either accepts probation or he doesn't.

 . . . .

THE COURT: ...So is he rejecting probation or not? If he isn't rejecting it, he signs the papers now. If he does not, I'm treating it as a rejection and will proceed to sentence him . . . .

433

(Defendant conferring with counsel off the record)

THE DEFENDANT: Then I guess I sit in jail.

THE COURT: Then he has rejected probation. Do you know of any reason why this Court should not proceed to sentence you at this time?

. . . .

THE DEFENDANT: I want a DNA test.

THE COURT: I'm not going to order that.

. . . .

THE COURT: [Prosecutor], your recommendation for sentence?

[PROSECUTOR]: Your Honor, it's clear that this defendant is flaunting the law, has absolutely no intent to ever comply with his legal obligations.

The State recommends that the Court impose the maximum two years initial term of confinement that the Court can impose, plus three years consecutive extended term of supervision.

THE COURT: Okay. [defense counsel]?

[DEFENSE COUNSEL]: Your honor, I discussed this with Mr. Pote and his wife and am authorized to request a sentence of time served.

THE COURT: Okay. Mr. Pote, anything further before I proceed to sentence you? . . .

. . . .

(Defendant conferring with counsel off the record)

THE DEFENDANT: I'm getting screwed either way . . . .

I ain't got no problem signing papers. Like I told the young lady, I'll sign the papers as long as I know the child was mine . . . .

. . . .

THE COURT: Anything further?

THE DEFENDANT: ...That's all I got to say.

THE COURT: Then the Court will consider in sentencing the defendant his age. First of all he was born on October 21st, 1957. The Court will consider as well — I don't know of any adult record that he has previously. Do you, [prosecutor]?

[PROSECUTOR]: He spent a great deal of his time in Michigan. I'm not sure of what his record may be in Michigan. I'm not aware of any other — let's see.

. . . .

[PROSECUTOR]: No, I don't have anything on any prior Wisconsin record, I guess.

THE COURT: The Court will also find and consider his lack of cooperation in this matter, consider the seriousness of this crime. The crime is not supporting a child for more than 120 days, which is a serious matter and a problem throughout the United States and one that must be combated.

Considering the statements of the District Attorney, as well as defense counsel. I'm going to consider the rights of the public and the need to protect the public in this matter. I'm going to . . . consider the deterrent effect of this sentence and the need to deter the defendant and others from committing the same or similar crimes.

I'm going to consider his rehabilitation needs, and certainly does need rehabilitation in this matter. I'm

going to consider the moral need for punishment in not supporting one's child in this matter.

In taking into consideration those sentencing guidelines, or not guidelines but considerations in this matter and the extended period of time in which this matter took place, that the child is 17 years of age at this point in time, the Court will sentence the defendant to two years in the Wisconsin State Prisons and will order an extended term of supervision in this matter of three years.

. . . .

[DEFENSE COUNSEL]: Your Honor, Mr. Pote has now indicated that he would sign the probation rules and their papers.

THE COURT: I think he's a little late.

¶ 7. Pote's counsel timely filed a notice of Pote's intent to pursue postconviction relief from the judgment sentencing him to prison. Counsel subsequently moved to withdraw, however, averring that "[d]ue to the Defendant's recent conduct, representation . . . of the Defendant has been rendered unreasonably difficult." The court granted the withdrawal request, but the State Public Defender declined to appoint successor counsel, having found Pote ineligible for continued representation, apparently because of his wife's earnings. Pote subsequently obtained postconviction counsel from the Frank J. Remington Center at the University of Wisconsin Law School. His new counsel moved for relief under WIS. STAT. § 974.06 from the conviction on the grounds that Pote was denied effective assistance of counsel and his plea was not voluntarily, knowingly and intelligently made. Pote also moved under WIS. STAT. §§ 809.30 and 974.02 for relief from the judgment sentencing him to prison on the grounds

that he had not rejected probation and that his counsel had been ineffective at the review/sentencing hearing.

¶ 8. At the postconviction hearing, Pote presented testimony from an orthopedic surgeon who had treated Pote for a shoulder injury during most of the year 2000. The doctor testified that Pote underwent two separate surgeries during that time and that he was essentially unable to "work at any job" from February through November of that year. The doctor also stated that he had no recollection or record of any contact from Pote's trial counsel. Pote's wife and Pote also testified to his inability to work during most of the year 2000.

¶ 9. Pote testified that he informed his trial counsel about the shoulder injury and surgeries. He also said that his counsel advised him to accept the State's plea offer and that he did not know that his inability to work in 2000 would have constituted a defense to count two. Regarding his refusal to sign the probation rules, he claimed that no one had ever explained "what probation was" to him and that he was unaware when he returned to court for the review hearing that his probation might be terminated. Pote explained that when he told the court "I guess I'll sit in jail," he was referring to his civil contempt sanction which he was then still serving. Finally, he testified that he never instructed his counsel not to make a sentencing argument on his behalf and he did not threaten his counsel.

¶ 10. Pote's trial counsel testified that he was aware of Pote's shoulder problems, but that the only information he was able to obtain was "a two-sentence letter" that Pote was under the doctor's care and "should be seen in follow up by an orthopedic surgeon." Counsel said that he made several attempts "to schedule a time" to speak with the doctor on the phone, but the doctor's "office never responded with such a time." Counsel

437

explained that he was aware of the possibility of a medical disability defense to the "[s]lightly more serious" second count, but that Pote had no defense to count 1, and that Pote's "instruction was to get him a deal which would result in no more jail time. I did that, and then his instructions were to stop negotiating further, and I did that." He also testified that he did not advise Pote to take the State's offer—"He . . . accepted it. It was his choice."

¶ 11. Regarding the events at the status review cum sentencing hearing, counsel claimed that Pote "forbade me to try to do anything about" the court's finding that he was rejecting probation, and that the "only thing I could have done would have been to knock him unconscious because he was going to express his rage to the Court that day." Counsel further testified that Pote "became violent and angry and threatened me," and that counsel "probably could have made some" sentencing arguments but felt "duty bound" to follow Pote's instructions, which "included not making a sentencing argument."

¶ 12. The trial court denied relief from the conviction, concluding that Pote's trial counsel had not rendered ineffective assistance of counsel with respect to Pote's plea to count two in exchange for the dismissal of count one and a recommendation for probation with no jail time. As to Pote's rejection of probation, the court reaffirmed its earlier conclusion that, by his words and actions at the review hearing, Pote had in fact rejected the probation originally ordered. As to counsel's performance with respect to the sentencing that immediately followed, the court found credible counsel's testimony that Pote threatened him and instructed him to do nothing, and that under the circumstances, counsel "had to follow what his client is telling

him to do." Accordingly, the court entered orders denying Pote's motions for relief from either the conviction or the sentence.[2]

## ANALYSIS

¶ 13. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that his trial counsel's performance was deficient and that this performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether trial counsel's actions constitute ineffective assistance presents a mixed question of law and fact. *See State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not reverse the trial court's factual findings regarding counsel's actions at trial unless those findings are clearly erroneous. *See id.* at 634.

¶ 14. Whether trial counsel's performance was deficient and whether that behavior prejudiced the defense, however, are questions of law which we review de novo. *See id.* In analyzing an ineffective assistance claim, this court may choose to address either the "deficient performance" component or the "prejudice" component first. *See Strickland*, 466 U.S. at 697. If we

---

[2] The court granted Pote a stay of the remainder of his sentence pending this appeal, releasing him on a signature bond with conditions. At the time of the stay, Pote had served some seven to eight months of the two-year term of confinement to which he was sentenced. He apparently remains free on bond, there being no indication in the record or in the trial court record entries posted on the Consolidated Court Automation Programs (CCAP) Wisconsin Circuit Court Access web site to the contrary.

determine that the defendant has made an inadequate showing on either component, we need not address the other. *See id.*

¶ 15. In order to establish deficient performance, Pote must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. However, "every effort is made to avoid determinations of ineffectiveness based on hindsight . . . and the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). In reviewing counsel's performance, we judge the reasonableness of counsel's conduct based on the facts of the particular case as they existed at the time of the conduct and determine whether, in light of all the circumstances, the omissions fell outside the wide range of professionally competent representation. *Strickland*, 466 U.S. at 690.

¶ 16. To prove prejudice, Pote must show that trial counsel's errors had an actual, adverse effect on the defense. *See id.* at 693. He must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Specifically, in order to prevail, Pote must convince us that, but for his counsel's improper actions or omissions, it is reasonably probable that he would not have pleaded no contest to count two, or that he would not have received the maximum sentence for the offense.

## I.

■■

¶ 17. We first consider Pote's claim that his counsel performed deficiently by not fully investigating his possible medical disability defense to count 2 and by not properly advising him regarding his plea to that count. As we have noted, we are bound by the trial court's factual findings regarding what Pote's counsel did or did not do, unless they are clearly erroneous. We accept the trial court's findings in this case inasmuch as they are largely based on its credibility determinations. *See State v. Hampton,* 217 Wis. 2d 614, 623, 579 N.W.2d 260 (Ct. App. 1998) ("We are not empowered to substitute our own credibility determinations for those made by the trial court.").

¶ 18. The trial court explicitly found Pote's counsel's testimony regarding what he did and did not do, and his reasons therefor, to be credible, and it found Pote's testimony incredible in several regards. In a nutshell, the court found that counsel attempted to contact Pote's doctor about the shoulder injury; that he discussed the charged offenses and "the defense on count 2" with Pote; that Pote sought a disposition that would not require him to serve additional jail time; and that counsel procured the offer of such a disposition from the State, which Pote freely accepted. The court concluded that counsel obtained "a very successful result for his client that he wasn't going to jail." We do not disagree.

■■■■■

¶ 19. Pote is correct that to provide effective representation to a person charged with a crime, an attorney is obligated to adequately investigate any potential defenses and discuss them with his or her

client. *See Pitsch*, 124 Wis. 2d at 638. Defense counsel should also thoroughly discuss any proposed plea agreement and its advantages and disadvantages with the client. *See State v. Rock*, 92 Wis. 2d 554, 563–64, 285 N.W.2d 739 (1979). The trial court found that counsel did precisely these things in this case. We disagree with Pote's suggestion that his counsel was obligated to recommend to him that he reject the offer because of the possibly meritorious defense to one of the two counts with which he was charged, or that counsel should have ignored Pote's instruction to obtain an overall disposition involving no jail time. Even though Pote established at the postconviction hearing that the medical defense to count two may have been stronger than Pote or his counsel believed prior to Pote's plea, as the trial court noted, this would not have diminished Pote's exposure to a felony conviction on count one.

¶ 20. We conclude that, in light of the trial court's factual findings based on its assessment of Pote's and his counsel's credibility, counsel's pre-plea performance fell within the wide range of professionally competent representation. *Strickland*, 466 U.S. at 690. Having so concluded, it is not necessary for us to address whether counsel's performance prejudiced Pote with respect to the tender and acceptance of his plea. *See id*. at 697.

## II.

¶ 21. We next address whether the trial court erred in determining at the "status review" hearing that Pote rejected the probation the court originally ordered.

¶ 22. In Wisconsin, the power to revoke a judicially imposed term of probation is statutorily vested with the executive branch. Wis. Stat. § 973.10(2); *see State v. Horn*, 226 Wis. 2d 637, 653, 594 N.W.2d 772

(1999). The sentencing court may, however, modify the conditions of or extend a term of probation. WIS. STAT. § 973.09(3)(a). The supreme court has determined that when a defendant refuses to accept probation and requests instead that a sentence be imposed, a court must honor the request. *State v. Migliorino*, 150 Wis. 2d 513, 540–42, 442 N.W.2d 36 (1989). This court concluded in *State v. McCready*, 2000 WI App 68, 234 Wis. 2d 110, 608 N.W.2d 762, that *Migliorino* and not *Horn* governs when a defendant who has already served a portion of his or her probation requests the court to terminate the probation and impose a sentence. *Id*. at ¶¶ 4–6.

¶ 23. In order to address Pote's claim that the trial court erred in determining that he had rejected the probation originally ordered, we must answer two distinct questions. The first is whether the trial court's determination that Pote rejected probation is a factual question not to be disturbed on appeal unless clearly erroneous, or one of law subject to our de novo review. Not surprisingly, the State contends it is the former while Pote argues it is the latter.[3] We agree with the State.

¶ 24. In support of his assertion that our review should be de novo, Pote cites *State v. Hansen*, 168 Wis. 2d 749, 755, 485 N.W.2d 74 (Ct. App. 1992). Our opinion in *Hansen*, however, had nothing to do with a defendant's rejection of probation. On the page Pote cites, we stated only the well-established principle that our review of whether a defendant has made a prima facie showing that a plea was accepted without the

---

[3] In his reply brief, however, without expressly conceding that the question is purely a factual one, Pote asks us to conclude that the trial court's "finding that Mr. Pote intended to reject probation was clearly erroneous."

procedures required under *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), is "a question of law which we review without deference to the trial court's determination." *Hansen*, 168 Wis. 2d at 755. As we explain below, we conclude that *Bangert*-like procedures are not required when a defendant opts to forego probation in favor of an imposed sentence. We thus conclude that *Hansen* is of no assistance on the question of whether the determination that a defendant has rejected probation is one of fact or of law.

¶ 25. At bottom, the question is one of determining Pote's intent when he appeared before the trial court for a review of the status of his probation. Determining what a person intends by evaluating his or her words and actions under the facts and circumstances at hand is generally viewed as a factual determination. *See State v. Lettice*, 221 Wis. 2d 69, 77, 585 N.W.2d 171 (Ct. App. 1998) ("Whether a prosecutor intended to provoke a mistrial . . . is a question of fact . . . ."). Thus, we may set aside the trial court's determination that Pote, by his words and actions in its presence, communicated a refusal to accept the probation originally ordered only if we conclude that the determination was clearly erroneous. We conclude it was not.

¶ 26. Pote points out that his counsel replied in the negative when the court inquired "is he rejecting probation?" We conclude the relevant inquiry, however, is not what Pote's counsel told the court, but what Pote himself communicated to the court regarding his intent.[4] When the court specifically informed Pote that it

[4] Pote argues that his counsel's "one-word response could not have been any clearer, and this should have ended the

would deem it a rejection of probation if he refused to then and there sign the rules of probation, Pote, after conferring with counsel, responded, "[t]hen I guess I sit in jail." Although Pote argues that this response was ambiguous and could have been a reference to the service of his civil contempt sanction, it was the trial court's role and not ours to interpret Pote's response. It did so ("Then he has rejected probation."), and we cannot conclude that the court's finding was clearly erroneous.

¶ 27. Pote plainly communicated to his probation officer and the court that he did not intend to comply with the condition of his probation that he pay past and current child support absent proof that he had fathered the child, notwithstanding the paternity judgment so finding and the fact that he had apparently been current in support payments as of May 1, 1999. His counsel, whom the court found credible, testified at the postconviction hearing that "Mr. Pote's position was that he was never going to pay child support, and he didn't care what the consequences were." In short, the record taken as a whole, satisfies us that the trial court's determination that Pote's response indicated his intent to reject probation was not clearly erroneous. Our conclusion is fortified by the deference we must accord the trial court's opportunity to observe and evaluate Pote's demeanor, tone and body language at the probation review hearing.

¶ 28. Pote contends, however, that we should require a defendant's rejection of probation to be clear and unequivocal. That is, Pote would have us reverse

matter." We note, however, that if Pote's counsel had instead replied "yes," but Pote's own words and conduct before the court indicated a contrary intent, we would be hard pressed to conclude that Pote had intended to reject probation.

because Pote never said "I reject probation" or "I refuse to be on probation." We decline to impose such a requirement. We conclude that a court's focus should be on whether a defendant communicates the intent to refuse probation rather than on the defendant's choice of words. As we have discussed, the question is one of fact for the trial court to determine in the first instance, and for us to review on the clearly erroneous standard.

¶ 29. Even though we conclude the court did not err in its factual determination of Pote's intent, our inquiry into the propriety of the court's determination that Pote rejected probation is not at an end. The second question we must address is what procedural safeguards, if any, should the trial court have employed to ensure that Pote's decision to reject probation was knowing and voluntary? That is, even if the trial court did not err in finding that Pote rejected probation, did it nonetheless err by failing to conduct a colloquy to determine Pote's understanding of the potential consequences of rejecting probation? Pote urges us to adopt a requirement for a probation-rejection colloquy similar to those for the acceptance of a plea,[5] waiver of jury trial[6] or waiver of counsel.[7] The State responds that there is "no logical or legal reason why the doctrines and body of law governing a defendant's waiver of constitutional rights should be layered onto the question of whether a defendant intended to reject probation." Again, we agree with the State.

[5] *See State v. Bangert*, 131 Wis. 2d 246, 267–72, 389 N.W.2d 12 (1986).

[6] *See State v. Anderson*, 2002 WI 7, ¶ 24, 249 Wis. 2d 586, 638 N.W.2d 301.

[7] *See State v. Klessig*, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997).

¶ 30. We do not dispute Pote's assertion that probationers possess a "conditional liberty interest" in the continuation of probation, and that probation cannot be involuntarily terminated without a revocation hearing affording certain procedural protections. *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973). But this is not a case where the State sought to revoke Pote's probation, and thus the issue before us is not whether Pote knowingly and voluntarily waived his constitutional right to a due process hearing on the State's grounds for revocation. Rather, the question is whether Pote rejected probation in favor of having a sentence imposed for the offense of which he was convicted. We have previously concluded that a "tardy" rejection of probation is nonetheless a rejection, and does not become a revocation or modification simply because the probation term has commenced. *See McCready*, 2000 WI App 68 at ¶ 6 ("[T]he right to reject probation lasts throughout the probationary period."). Quite simply, the conditional liberty Pote might have enjoyed on probation was not taken from him by either the State or the court—he opted not to accept the probation offered to him.

¶ 31. While we might not go so far as the State in labeling probation "a matter of grace or privilege," we do agree with it that defendants have no constitutional or statutory *right* to be placed on probation in lieu of receiving a sentence for an offense. Unlike a defendant who is denied counsel or trial by jury, a defendant cannot claim constitutional error stemming solely from a court's failure to place him or her on probation. We thus reject Pote's suggestion that requirements similar to those in place for waiving a jury trial or representa-

447

tion by counsel are constitutionally required when a defendant declines the opportunity for probation.

¶ 32. We also decline to impose a rigid set of procedures as a matter of common law entitlement.[8] It is sufficient that the record show that the defendant knew the possible consequences of refusing probation, a showing typically supplied (as in this case) by the plea colloquy. Pote was informed before entering his plea that he faced a maximum five-year sentence if convicted of the offense. The court further informed him at the plea hearing that it was not bound by the parties' agreed upon recommendation for probation, and that if the recommended probation were revoked, he could be required to "serve a time in jail or prison." We conclude no additional colloquy was required at the time Pote rejected probation.

### III.

¶ 33. We next consider whether Pote's counsel rendered effective assistance at the resentencing which immediately followed Pote's rejection of probation. We have described the standards applicable to this inquiry at the beginning of the Analysis section of this opinion. We conclude that counsel performed deficiently at the time of Pote's resentencing and that Pote suffered prejudice as a result of counsel's performance.

---

[8] Both the supreme court and this court have noted that the legislature may wish to address the issue of a defendant's right or privilege to reject probation. *See State v. Migliorino*, 150 Wis. 2d 513, 542, 442 N.W.2d 36 (1989); *State v. McCready*, 2000 WI App 68, ¶ 6, 234 Wis. 2d 110, 608 N.W.2d 762. If it does so and chooses to retain that option, it may wish to specify the timing and manner for a defendant's exercise of it.

¶ 34. We acknowledge that the trial court found credible counsel's testimony that Pote threatened him and instructed him to "do nothing" when the court proceeded to sentence him to prison for his failure to pay child support. We conclude, however, that notwithstanding his client's arguably erratic and irrational behavior, counsel's failure to bring to the court's attention any of several mitigating circumstances relevant to sentencing, or in the alternative, to request a continuation of the sentencing proceeding and permission to withdraw from representation, constituted omissions which fall outside the range of professionally competent representation. *See Strickland*, 466 U.S. at 690.

¶ 35. First, we see no reason why counsel could not have informed the court that his client was upset over his present circumstances and had requested that counsel not make an argument on his behalf, but that counsel felt obligated to bring to the court's attention one or more of the following facts. Pote had no previous criminal record of any kind. He had cooperated with authorities regarding the present charges by surrendering to Michigan authorities when he became aware of the warrant for his arrest, and by waiving a preliminary hearing and pleading no contest. He was already serving a 180–day civil jail commitment for the same child support delinquency. Counsel might also have noted that Pote had suffered a shoulder injury during the year 2000 which rendered him unable to work for much of the year. And finally, counsel could have pointed out that Pote was not a danger to the community or argued that society, as well as his son and the boy's mother, would be best served by imposing a sentence that would permit Pote to obtain gainful employment in order to meet his support and other obligations.

449

¶ 36. Because Pote was then serving a civil jail commitment, it is reasonable to assume that jail-transport deputies or a bailiff were present in the courtroom during the resentencing proceeding. We find it hard to accept that counsel would have been in reasonable fear for his physical safety had he proceeded to make the favorable remarks outlined above. However, even if we underestimate the intensity of Pote's emotional state and the credibility of any threats he made toward counsel that morning, we conclude that if counsel believed he could not proceed under the circumstances to argue on Pote's behalf, it was his obligation to seek to withdraw from representation.[9] In short, we conclude that at the time of sentencing, "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687, and that he should have, at a minimum, taken steps to attempt to protect his client's interests.

¶ 37. The State contends, however, that Pote's counsel cannot be deemed deficient for following his client's instruction to "do nothing" at the resentencing, citing *State v. Divanovic*, 200 Wis. 2d 210, 546 N.W.2d 501 (Ct. App. 1996). We agree that counsel cannot be faulted for following the informed and well-considered instructions of his or her client. *See id.* at 225 ("A defendant who insists on making a decision which is his or hers alone to make contrary to the advice given by the attorney cannot subsequently complain that the attorney was ineffective . . . ."). It is largely because, on the facts found by the trial court, Pote made an in-

---

[9] We recognize that a request to withdraw, if granted, would have required the sentencing to be set over to allow Pote to obtain new counsel, but we conclude that, under the circumstances, a continuance of the sentencing for a reasonable time would have not have prejudiced Pote.

450

formed choice regarding his plea that we decline to deem counsel's pre-plea performance deficient.

¶ 38. There are two flaws in the State's present argument, however. The first is that there is no finding or indication in the record that Pote's counsel informed him of the advisability of counsel's making a sentencing argument or of seeking to continue the sentencing to allow for the substitution of counsel. Thus, to the extent counsel was following his client's instructions at the resentencing hearing, those instructions were not shown to have been given only after Pote had received and considered counsel's advice regarding what actions might be in his best interest. *See id.* at 224 ("[L]imits on the objectives of representation must follow consultation between the lawyer and the client." (citing SCR 20:1.2 cmt)).

¶ 39. A second reason that our analysis in *Divanovic* does not apply on the present facts stems from the court's finding that Pote threatened his counsel at the hearing. As we have discussed, our conclusion that counsel did not adequately represent Pote at the sentencing hearing does not rest solely on counsel's failure to make a sentencing argument, but on counsel's failure to recognize that if he felt he could not do so because of his client's threat, he was obligated to seek withdrawal from representation. Counsel did inform the court soon after the sentencing that he felt compelled to withdraw from representing Pote because Pote's conduct had rendered continued representation "unreasonably difficult." We conclude that the belatedly acknowledged rupture in the attorney-client relationship occurred when Pote intimidated his counsel into "doing nothing" at sentencing, and our analysis in *Divanovic* simply does not speak to such a circumstance.

¶ 40. We next turn to the issue of prejudice. One cannot read the transcript of the resentencing (see ¶ 6 above) without sensing that the prosecutor and defense counsel (and perhaps even the court) were losing patience with Pote's stubbornness. Given the circumstances and the State's request for a sentence to the maximum terms of confinement and supervision, reasonably competent counsel would have realized that a failure to counter the prosecutor's recommendation (or to request a continuance) would not bode well for the client's interests. Counsel, however, did nothing to stop or slow the momentum toward the court's imposition of the requested maximum sentence.

¶ 41. We conclude that Pote suffered prejudice on account of his counsel's failure to adequately represent him at the resentencing. Had counsel made the relevant mitigating arguments legitimately available to Pote on this record, or had he taken steps that would have permitted another attorney to do so on another day, it is "reasonably probable" Pote would have received something less than the maximum sentence. *See McCleary v. State*, 49 Wis. 2d 263, 275, 182 N.W.2d 512 (1971) ("[T]he legislature intended that maximum sentences were to be reserved for a more aggravated breach of the statutes, and probation or lighter sentences were to be used in cases where the protection of society and the rehabilitation of the criminal did not require a maximum or near-maximum sentence."). In short, Pote could not have fared any worse than he did, and our "confidence in the outcome" of the sentencing proceeding is "undermine[d]." *See Strickland*, 466 U.S. at 694.

¶ 42. Because we reverse the judgment imposing sentence on the grounds of ineffective assistance of counsel, and we thus remand for resentencing, we do not reach Pote's argument that the court erroneously

exercised its discretion by imposing an excessive sentence. We note as well that Pote did not challenge his sentence in the postconviction motions he filed in the trial court, nor did he request the court to modify its sentence. *See State v. Chambers*, 173 Wis. 2d 237, 261, 496 N.W.2d 191 (Ct. App. 1992) (noting that we will generally decline to address a sentencing challenge not raised in the trial court by appropriate motion).

## CONCLUSION

¶ 43. For the reasons discussed above, we order the following disposition: The order entered February 19, 2002, denying postconviction relief under WIS. STAT. § 974.06 from the judgment of March 12, 2001, convicting Pote of felony failure to pay child support, is affirmed. The order of February 19, 2002, denying relief under WIS. STAT. §§ 809.30 and 974.02 from the judgment of June 22, 2001, is affirmed in part and reversed in part. Specifically, the trial court's finding that Pote rejected probation is affirmed, but we reverse with respect to the sentence imposed. Accordingly, the judgment entered June 22, 2001, is also reversed and the case is remanded for resentencing.

*By the Court.*—Judgment reversed; orders affirmed in part, reversed in part and cause remanded.