PER CURIAM.
¶1 Jeffery Lopez appeals his judgment of conviction entered on his guilty plea to felony intimidation of a victim; a charge of physical abuse of a child was dismissed but considered at sentencing. Lopez also appeals an order denying his postconviction motion without a hearing.
¶2 In his postconviction motion, Lopez asserted that he was entitled to sentence modification based on a new factor: a doctor's report regarding the examination of the child allegedly abused, which was not available at the time of sentencing. In its decision denying his motion, the trial court stated that it was aware of the doctor's opinions at the time of sentencing-a summary of the doctor's conclusions was included in the complaint-and therefore it was not a new factor. However, the full report from the doctor, which includes some findings that Lopez believes are material to his claim, was first submitted to the court with Lopez's postconviction motion; thus, the court did not have that full report at the time of sentencing. Therefore, Lopez argues that the court's determination that there was no new factor was erroneous as a matter of law.
¶3 Additionally, Lopez argues that his trial counsel was ineffective at sentencing by failing to present mitigating factors and exculpatory evidence regarding the dismissed child abuse charge. Lopez further asserts that the trial court never reviewed exhibits relating to these claims prior to issuing its decision denying his postconviction motion. He contends that those exhibits were likely not received by the court until after the filing date of its decision, and that it was an erroneous exercise of its discretion to deny his motion without reviewing those exhibits.
¶4 We conclude that Lopez has not established that the doctor's report constitutes a new factor entitling him to sentence modification, nor has he proven that his trial counsel was ineffective. Furthermore, Lopez has not demonstrated that the trial court was obligated to review all of his exhibits prior to issuing its denial of his postconviction motion. Therefore, we affirm.
BACKGROUND
¶5 The charges against Lopez were brought as a result of an investigation into injuries suffered by E.N., who was two years old at the time. Milwaukee police were called to Children's Hospital of Wisconsin on May 27, 2016, after E.N. was brought there by his mother, N.V. N.V. is married to Lopez. They lived at a residence with Lopez's mother, Lissette Pellot, and Lopez's ex-mother-in-law, Iris Vazquez.[1]
¶6 When E.N. was evaluated at Children's Hospital, he had round burns on his right cheek, left lower arm, and left outer knee, consistent with cigarette burns. He also had splash burns on his outer knee, hip, and left shoulder, apparently caused by hot liquid being spilled or thrown onto him. Additionally, E.N. had severe bruising on his upper back, buttocks, chest, arms, face, neck, and genital area. He also had abrasions on his buttocks, left chest, inner left thigh, outer right thigh, scalp, groin, and genitals; the linear pattern of some of the abrasions was consistent with physical abuse. Furthermore, E.N. tested positive for marijuana, indicating that he had ingested the drug.
¶7 N.V. spoke with police at the hospital on May 27. She stated that she had been at work all day, and had noticed the injuries to E.N. after Vazquez and Pellot had picked her up at work that day. She further stated that she had given E.N. a bath the night before and had noticed only one bruise on his forehead and some minor bruising around his genital area from a recent fall down concrete stairs on his toy motorcycle. Based on N.V.'s statement that E.N. did not have those extensive injuries during his bath the previous night, the injuries were presumed to have been sustained by E.N. on May 27.
¶8 N.V. told police that E.N. he had slept in the same room in the basement as N.V. and Lopez the night before. She then said that in the morning, Lopez had driven her to work between 5:00 a.m. and 5:30 a.m.; E.N. remained at home, asleep.
¶9 When Vazquez was interviewed by police, she stated that Lopez had left the house again at 7:20 a.m. on May 27 to take N.V.'s other children to school, and that E.N. had again remained at the home, asleep. She said that Lopez returned home and was with E.N. until he left for work at approximately 10:00 a.m. She further noted that Lopez had dressed E.N. before he came upstairs to leave for work.
¶10 When Pellot was interviewed by police, she likewise said that Lopez had dressed E.N. that morning. Both women stated that after Lopez went to work, E.N. was with them until approximately 2:00 p.m., when they picked up N.V. from work.
¶11 N.V. told police that when Vazquez and Pellot picked N.V. up from work-with E.N. in the car-she had noticed that E.N. was dressed in a long-sleeved shirt and blue jeans. She thought this was odd since it was a warm day.
¶12 N.V. explained that after Vazquez and Pellot picked her up from work, they had all then gone to pick up one of N.V.'s other children from school. N.V.'s mother, Wanda Massa, was at the school when they arrived. She asked to see E.N., so N.V. took him out of his car seat, lifting up his shirt in the process. Massa observed burn marks on E.N.'s side. N.V. then checked E.N. over more completely and discovered more burn marks on his stomach, back, and arms. He was also covered in bruises that N.V. had not seen before. N.V. and Massa had then taken E.N. to Children's Hospital.
¶13 N.V. told police that she had called Lopez to tell him about E.N.'s injuries and requested that he come to the hospital. However, Lopez instead went to a friend's house to play video games. Additionally, during a subsequent conversation Lopez told N.V. that he "has been through this before"; N.V. asked him "if it was for beating kids" and Lopez did not respond. Lopez later said he had been referring to police interaction in general, and that he had never been accused of harming a child.
¶14 Pellot and Vazquez denied causing any harm to E.N. They both stated that they were together with E.N. for most of the day after Lopez had gone to work, and thus declared that E.N.'s injuries could not have happened during that time.
¶15 Lopez was arrested on June 1, 2016, on a municipal warrant, and was questioned several times about E.N.'s injuries. Lopez denied harming E.N. He also denied that he had dressed E.N.-in long sleeves and pants-on the morning of May 27. However, in addition to the statements of Vazquez and Pellot, who both said that Lopez had dressed E.N., N.V. subsequently provided police with a recording of a phone call between she and Lopez where Lopez admitted to dressing E.N. that morning.
¶16 While in custody on the municipal warrant, Lopez placed two calls to his sister, Jasmine Lopez-Pellot. During both calls, he requested that Lopez-Pellot call N.V. and tell her not to go to court. N.V. did not appear at a subsequent charging conference on this matter.
¶17 Lopez was charged on August 12, 2016. On the day before trial, he reached a plea agreement with the State wherein he agreed to plead guilty to the charge of felony intimidation of a victim, and the child abuse charge was dropped. However, pursuant to the agreement, the State was free to discuss the underlying facts of the child abuse charge at sentencing.
¶18 At the sentencing hearing, the trial court discussed E.N.'s extensive injuries, calling them "among the most serious" that the court had seen. The court noted that there was "a lot of circumstantial evidence" that pointed to Lopez as being E.N.'s abuser. The court also noted that Lopez's conduct seemed to conflict with his claim that he had not inflicted the injuries on E.N.: he had gone to play video games instead of going to the hospital when E.N. was admitted, and he had attempted to persuade N.V. not to come to court on the matter. Ultimately, the court sentenced Lopez to four years of initial confinement and five years of extended supervision.
¶19 Lopez filed a postconviction motion seeking a sentence modification. Lopez argued that modification was warranted based on a new factor, specifically a report from Dr. Angela L. Rabbitt, a board certified pediatric child abuse specialist at Children's Hospital. Dr. Rabbitt opined that E.N. may have a bleeding disorder as evidenced by blood tests done on E.N. showing an elevated partial thromboplastin time (PTT), which could explain the bruising. Lopez asserted that this report was not available to the trial court at the time of sentencing, and the information regarding the potential bleeding disorder was a relevant factor that should be considered.
¶20 Lopez also argued that his trial counsel was ineffective for failing to present relevant mitigating factors at sentencing. These factors included information regarding E.N.'s injuries from his fall down the stairs on his toy motorcycle; the relatively short amount of time that Lopez was alone with E.N. on May 27; statements by N.V. that she did not believe that Lopez had injured E.N.; the fact that E.N. could speak and did not name Lopez as the person who injured him; and Lopez's reasons for not going to the hospital when E.N. was admitted.
¶21 The trial court rejected Lopez's arguments. The court stated that it knew of Dr. Rabbitt's opinion at the time of sentencing, and therefore it was not a new factor. The court further stated that none of the mitigating factors cited by Lopez "would have altered the court's sentencing determination." Therefore, the court denied Lopez's motion. This appeal follows.
DISCUSSION
I. Dr. Rabbitt's report was not a new factor that would warrant sentence modification.
¶22 On appeal, Lopez renews his argument that Dr. Rabbitt's report is a new factor warranting sentence modification. A motion for sentence modification may be granted "upon a showing of a new factor." State v. Hegwood , 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983). A "new factor" is defined as:
[A] fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.
Rosado v. State , 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). The defendant bears the burden of proving "by clear and convincing evidence the existence of a new factor." State v. Harbor , 2011 WI 28, ¶36, 333 Wis. 2d 53, 797 N.W.2d 828. Whether the defendant has established the existence of a new factor is a question of law that we review de novo. See Hegwood , 113 Wis. 2d at 547.
¶23 As previously noted, the trial court stated in its decision denying Lopez's postconviction motion that it "was aware of Dr. Rabbitt's opinions at the time of sentencing, and therefore, a new factor does not exist." The State concedes that the court did not have access to Dr. Rabbitt's full report at the time of sentencing, although Dr. Rabbitt's findings after examining E.N. were summarized in the complaint. That summary, however, did not include information about E.N.'s potential bleeding disorder.
¶24 Lopez's argument infers that Dr. Rabbitt's full report-which included the information that E.N. could have a bleeding disorder-would support a finding that E.N.'s injuries were not the result of physical abuse. That is not the case. In the first place, Dr. Rabbitt stated that E.N.'s elevated PTT "may be due to a bleeding disorder" (emphasis added); it had not been affirmatively diagnosed. Furthermore, Dr. Rabbitt opined that "a bleeding disorder is not suspected to have caused these multiple patterned bruises." Moreover, she noted that "[a] bleeding disorder would not explain the burns or abrasions" suffered by E.N. In sum, Dr. Rabbitt declared that "[E.N.'s] injuries are consistent with physical abuse even if a bleeding disorder is ultimately diagnosed."
¶25 In order to constitute a new factor, it is not enough that a certain fact was not known at the time of sentencing; that fact must also be "highly relevant to the imposition of sentence[.]" See Rosado , 70 Wis. 2d at 288. While Dr. Rabbitt's full report was not available to the trial court at the time of sentencing, Lopez fails to demonstrate how it would be highly relevant to the imposition of his sentence: the report states that the PTT test was not conclusive for purposes of diagnosing a bleeding disorder, and even if a disorder was eventually diagnosed, Dr. Rabbitt concluded that it would not account for all of E.N.'s injuries. In short, it does nothing to disprove the evidence relating to the child abuse charge against Lopez that was considered by the trial court at sentencing. As a result, the report would not have been "highly relevant to the imposition of sentence[.]" See id . Therefore, it does not constitute a new factor.
¶26 "If a trial court reaches the correct result based on erroneous reasoning, we will affirm." Bence v. Spinato , 196 Wis. 2d 398, 417, 538 N.W.2d 614 (Ct. App. 1995). Although the trial court had not reviewed Dr. Rabbitt's full report at the time of sentencing, our review of the report supports the trial court's determination that it is not a new factor. Accordingly, we affirm that determination in its decision denying Lopez's postconviction motion.
II. Lopez has not demonstrated that he received ineffective assistance of counsel.
¶27 Next, Lopez claims he received ineffective assistance of counsel at his sentencing hearing. For a claim of ineffective assistance of counsel, the defendant must demonstrate: "(1) that his counsel's performance was deficient; and (2) that the deficient performance was prejudicial." State v. Romero-Georgana , 2014 WI 83, ¶39, 360 Wis. 2d 522, 849 N.W.2d 668. "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." State v. Love , 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Id. (citations and one set of quotation marks omitted). "A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." State v. Smith , 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.
¶28 "We will not reverse the trial court's factual findings regarding counsel's actions ... unless those findings are clearly erroneous." State v. Pote , 2003 WI App 31, ¶13, 260 Wis. 2d 426, 659 N.W.2d 82. However, "[t]he ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." State v. Johnson , 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).
¶29 In his postconviction motion, and reiterated in this appeal, Lopez lists a number of factors that his trial counsel did not present at sentencing, which he claims rendered his performance deficient and caused prejudice to Lopez. Lopez asserts that these factors, as supported by the exhibits submitted with his postconviction motion, would have challenged the trial court's assumption that Lopez had caused the injuries to E.N.
¶30 For example, he points to statements from witnesses about various injuries seen on E.N. prior to May 27. For example, Xiomara Morales, N.V.'s aunt who regularly takes care of E.N., stated she had seen bruising on E.N. from the fall on his toy motorcycle as well as scratches that N.V. had told her were from a dog. Additionally, Vazquez stated that E.N. had other bruises from an additional fall on the basement steps as well as redness on the tip of his penis that she thought was a rash.
¶31 Lopez also argues that the statement from Vazquez demonstrates that Lopez was not alone with E.N. for much of the morning on May 27 due to his morning routine of driving N.V. to work and the other children to school. He further contends that he made an additional trip that morning to a methadone clinic to pick up his medication for his heroin addiction.
¶32 Moreover, Lopez argues that the State's assertion that N.V. believed that Lopez was responsible for hurting E.N. is contradicted by recorded phone calls between Lopez and N.V., in which N.V. said that she did not believe that Lopez had harmed E.N. Lopez also notes that Dr. Rabbitt's report contains a statement that when she asked E.N. who had hurt him, he named Lopez's four-year-old son. Additionally, Lopez provides reasons for not going to the hospital that day after N.V. told him about E.N.'s injuries-primarily, his lack of transportation.
¶33 The trial court rejected Lopez's claims, noting that most of the factors he listed were "nothing more than various versions of facts[.]" Indeed, information regarding E.N.'s previous injuries, as well as the activities of everyone in the house on May 27, were set forth in the complaint and discussed at the sentencing hearing. Furthermore, the previous injuries described by Vazquez and Morales do not include the extensive injuries found on E.N. when he was taken to Children's Hospital, and Lopez's trip to the methadone clinic does not disprove the fact that there was still a period of time on the morning of May 27 that he was alone with E.N.
¶34 Additionally, E.N.'s purported naming of Lopez's four-year-old son as the person who hurt him is not compelling evidence. First, E.N. was two years old at the time of this incident. When he was asked who hurt him, his answer was not clear; N.V. translated that she thought he was saying the name of Lopez's son. However, that son did not live with them, and N.V. stated that he had not been around E.N. for several days. Furthermore, when Lopez discussed E.N.'s answer during one of his interviews with police, the detective noted that it was "unlikely that a four-year-old is responsible for the injuries" to E.N., and Lopez agreed.
¶35 With regard to N.V.'s statements to Lopez that she did not believe he had harmed E.N., they contradict other statements made by N.V. to police: that she thought it was strange that Lopez had dressed E.N. in a long-sleeved shirt and jeans on a warm day, and that Lopez had told her that he had "been through this before" and had not responded when N.V. asked him if "it was for beating kids[.]" These statements seem to indicate that N.V. suspected that Lopez had caused E.N.'s injuries, and the trial court at sentencing questioned Lopez as to why he had dressed E.N. in long pants and a long-sleeved shirt on a warm day.
¶36 However, while the trial court did indeed discuss E.N.'s clothing, it was not a primary consideration that the court relied on in imposing Lopez's sentence. Rather, the trial court stated the facts that most "significantly impacted [its] sentencing decision" were that Lopez opted to go elsewhere instead of the hospital after N.V. told him of E.N.'s injuries, and that Lopez had made phone calls to try to keep N.V. from appearing in court so that the matter would "go away." The mitigating factors relating to these primary considerations do not refute the underlying facts of those considerations: his excuse of not having transportation to the hospital does not change the fact that instead of putting more effort into finding transportation, he went to play video games with a friend; and the purported "exculpatory" statements by N.V. do not negate the fact that he had attempted to persuade N.V. not to go to court in the hope that the matter would "go away."
¶37 As a result, the trial court declared that "none of the arguments set forth in [Lopez's] motion would have altered the court's sentencing decision in any respect." We agree that the alleged deficiencies of trial counsel argued by Lopez would not have had an impact on the trial court's reasoning for the sentence it imposed. Therefore, because Lopez has not demonstrated these alleged deficiencies would have altered the outcome of his sentencing hearing, he has not proven that he was prejudiced by those alleged errors. See Love , 284 Wis. 2d 111, ¶30 ; see also State v. Giebel , 198 Wis. 2d 207, 219, 541 N.W.2d 815 (Ct. App. 1995) (where this court held that the defendant had not satisfied the prejudice prong, noting the trial court's finding that "even if trial counsel had performed at sentencing in the manner suggested by [the defendant], the sentence would have been the same").
¶38 We further note that we agree with the trial court's conclusion that trial counsel's performance was not deficient. The record indicates that trial counsel discussed several mitigating factors during the sentencing hearing, such as the fact that Lopez had no prior convictions, he had no previous allegations of abuse against him, he was gainfully employed, and he took care of his family. Counsel also focused on the fact that Lopez had adamantly and consistently denied causing E.N.'s injuries throughout the proceedings.
¶39 The alleged omissions of trial counsel as asserted by Lopez do not overcome the strong presumption that trial counsel rendered adequate assistance. See State v. Nielsen , 2001 WI App 192, ¶12, 247 Wis. 2d 466, 634 N.W.2d 325. As the trial court pointed out, most of the alleged omissions were simply alternate versions of facts of which the court was already aware. In short, Lopez has not demonstrated that his trial counsel's performance fell below "an objective standard of reasonableness." See Love , 284 Wis. 2d 111, ¶30.
¶40 Nevertheless, Lopez argues that the trial court erroneously exercised its discretion in denying his postconviction motion because it did not review all of the exhibits he submitted in support of his ineffective assistance claim. Lopez electronically filed his motion and the paper exhibits he submitted in support of his arguments; however, he also submitted several DVDs that had to be sent by regular mail. Because the trial court issued its decision the day after Lopez's motion was electronically filed, he contends that the exhibits sent via regular mail had not reached the court before the decision was released. Thus, he asserts that those exhibits were never reviewed, and he argues that the failure of the court to review and consider them was an erroneous exercise of its discretion.
¶41 We will uphold a discretionary decision of the trial court if it " 'has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " Hefty v. Strickhouser , 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citation omitted). Lopez fails to provide any legal authority stating that the trial court had an affirmative obligation to review all of his supporting exhibits. In contrast, the trial court's decision demonstrates that the court considered the facts relevant to Lopez's ineffective assistance claim and then applied the proper legal standard. See id. Furthermore, we agree with its conclusion that Lopez's ineffective assistance claim fails. Therefore, the trial court's decision was not an erroneous exercise of its discretion.
¶42 Accordingly, we affirm Lopez's judgment of conviction and the order of the trial court denying his postconviction motion.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

N.V. has two other children who also lived at that residence.